# EXHIBIT 1

# EXHIBIT 1

**reviewjournal.com**


PRINT THIS
Powered by Clickability

Jun. 28, 2010
Copyright © Las Vegas Review-Journal

## POLICE ARRESTS: Misdemeanor violations leading to deportations

By LYNNETTE CURTIS
LAS VEGAS REVIEW-JOURNAL

Since the inception of its partnership with federal immigration authorities, the Metropolitan Police Department has repeatedly said it would target only violent, "higher-level" criminal illegal immigrants for potential deportation.

But more than a third of inmates the police department has referred to U.S. Immigration and Customs Enforcement in the partnership's first 18 months were arrested on misdemeanor charges including jaywalking, driving without a license and other minor traffic offenses, according to police records.

Such arrests have again raised concerns among civil rights leaders worried that the partnership -- which allows specially trained officers at the Clark County Detention Center to identify immigration violators and place immigration holds on them -- targets Hispanics, could lead to racial profiling and makes people afraid to report crimes.

"Police officers should be focused on keeping the community safe, not enforcing petty crimes in the hopes that their target may be deportable," said Maggie McLetchie, an attorney with the American Civil Liberties Union of Nevada.

Las Vegas police insist the arrests on minor charges do not violate the department's stated intent to target only illegal immigrants who have committed violent crimes. That's because a person who is arrested for jaywalking, for example, would only be referred to ICE if they had a police record that included a violent crime, police said.

"You may have a guy who got arrested for jaywalking, but it wasn't jaywalking that got him deported," said Officer Jacinto Rivera, a police spokesman. "It was his prior history of robbery and kidnapping."

McLetchie said she is concerned some "overzealous" police officers could use "low-level arrests as a way to get people in the door" for eventual deportation.

"Some of these are arrests for things that shouldn't even be crimes," she said. "I don't think anybody wants to live in a police state where people are getting hauled off to jail because they look like they might be undocumented."

The partnership between the Department and ICE, dubbed "287(g)" after the corresponding section of the federal Immigration and Nationality Act, is one of dozens of such agreements with law enforcement agencies in 26 states. It lets local law enforcement hold deportable inmates after they otherwise would be released so immigration officials can take custody of them.

The local partnership began in November 2008.

In its first 18 months, local corrections officers placed immigration holds on more than 3,300 inmates, according to booking records the department provided to the Review-Journal.

More than a third of those inmates were arrested on misdemeanor charges, including fishing without a license, sleeping in public, possessing an unregistered animal and "walking on side of road."

Rivera said such arrests are typically part of police checkpoints or targeted policing in high-crime areas.

"If it's a hot area, anyone who commits any crime there, we are going to be effecting an arrest," he said. "If you are in an area known for violence or narcotics, and you have a history of that, you'll get arrested for jaywalking."

Rivera said officers have no interest in hassling or arresting illegal immigrants who have committed no other crimes.

He noted that police chose not to place immigration holds on at least 2,300 inmates found to be in the country illegally during the partnership's first 18 months, because they had no prior criminal history and had been booked on only minor charges.

"Cops want to catch guys who are preying on people," Rivera said.

"When you go home at night, you want to know the individual you put in jail means a victim won't be victimized tonight. If that (being in the country illegally) is their only crime, it makes no difference to the overall safety of the community."

As for targeting people for arrest just because they are Hispanic or might be illegal immigrants, Rivera said, "We can't do that. We don't have the power."

Clark County Sheriff Doug Gillespie has said he supports the 287(g) partnership because it targets violent criminals and because federal officials aren't adequately enforcing immigration laws.

Gillespie emphasized that a person's immigration status will be checked only after that person has been arrested on other charges.

Before the agreement, local officers did not have the ability to check the immigration status of inmates and had to rely on ICE to investigate and place detainers on potential immigration violators.

ICE did so only sporadically, and many deportable inmates would be released in the meantime, police said.

The department spends $1.3 million a year to staff the 287(g) program.

ICE deported 1,897 of the inmates referred by local correction officers between November 2008 and May 2010, the agency said. Other inmates may still be awaiting final decisions in immigration court. Those proceedings can drag on for months or even years.

Programs such as 287(g) tend to have a chilling effect on the immigrant community, said Peter Ashman, a local immigration attorney who also is a member of the board of the local ACLU.

"Many law enforcement agencies have taken a pass on 287(g) because they know it's going to make it difficult for them to have good relationships with local immigrant communities," Ashman said. "It damages that relationship and makes us all less safe."

The local 287(g) partnership was unnecessary, he said.

"The argument was it would be used to get rid of dangerous criminals. We were doing that already."

But Ashman said controversy over the local partnership has faded somewhat over time, because there is "no evidence police haven't held true to their word that this was only going to be an inside-the-station enforcement tool."

"If somebody has been convicted of a serious crime and should have been deported before, it's kind of hard to argue that they shouldn't get deported now," he said.

Of the inmates local corrections officers referred to ICE, 17 percent had been deported before, according to police records.

The majority of inmates were citizens of Mexico, but they also came from the United Kingdom, Poland, Russia, Italy, China, Vietnam and other countries.

Contact reporter Lynnette Curtis at lcurtis@reviewjournal.com.

**Find this article at:**
http://www.lvrj.com/news/questions-generated-by-287-g--97289294.html

☐ Check the box to include the list of links referenced in the article.

Copyright © Las Vegas Review-Journal, 1997 - 2008

Go Green! Subscribe to the electronic Edition at www.reviewjournal.com/ee/

# EXHIBIT 2

# EXHIBIT 2

Share  Report Abuse  Next Blog»    Create Blog  Sign In



# Immigrant and Refugee Issues in the News
## CENTER FOR INTERCULTURAL ORGANIZING

### About Me



Center for Intercultural Organizing

The Center for Intercultural Organizing is a diverse, grassroots organization working to build a multi-racial, multicultural movement for immigrant and refugee rights.

View my complete profile

### Labels

287(g) program (4)
American Evangelicals (1)
American Immigration Lawyers Association (1)
Anti-Immigration Groups (1)
Arizona (11)
Asylum (13)
Ballot Measures (1)
California (3)
Citizenship and Immigration Services (5)
Court Decisions (3)
Demographics (3)
Department of Homeland Security (5)
Deportation (2)
Detention (10)
Dream Act (8)
Economy (16)
Enforcement of Immigration Laws (6)
English-Only (3)
Florida (3)
Human Trafficking (2)
ICE (30)
Immigrants (3)
Immigrants rights (1)
Immigration and Customs Enforcement (5)
Immigration History (3)
Immigration Law (4)
Immigration Reform (26)
Iowa (1)
LGBTQ (3)
Maryland (3)
Military (3)
Multi-Cultural Forum/Event (1)
National (27)
Nativism (4)
Nevada (1)
New Mexico (1)
New York (5)
North Carolina (2)
Oregon (3)
President Obama (2)
Racial Profiling (9)
Raids (1)
Refugees (4)
Regional (1)
South Carolina (2)
Supreme Court (2)
Temporary Protected Status (2)
Tennessee (2)
Texas (5)
Undocumented Immigrants (68)
US Census (5)
US Citizenship (2)
US Congress (5)
Utah (1)
Victims of Crime (1)
Washington (8)
Youth (12)

### Blog Archive

▼ 2010 (12)
  ▼ July (12)
    Farmers Tackle Immigration Issues
    Immigration Reform Must Ensure Refugee Protection
    Illegal Workers Swept From Jobs in 'Silent Raids'
    Arizona immigration lawsuit: Obama sails into a po...
    ICE mulls 'softening' immigration detention center...
    Britain's Supreme Court Rules in Favor of Gay Asyl...

---

Thursday, July 8, 2010

## POLICE ARRESTS: Misdemeanor violations leading to deportations

By LYNNETTE CURTIS
LAS VEGAS REVIEW-JOURNAL

Since the inception of its partnership with federal immigration authorities, the Metropolitan Police Department has repeatedly said it would target only violent, "higher-level" criminal illegal immigrants for potential deportation.

But more than a third of inmates the police department has referred to U.S. Immigration and Customs Enforcement in the partnership's first 18 months were arrested on misdemeanor charges including jaywalking, driving without a license and other minor traffic offenses, according to police records.

Such arrests have again raised concerns among civil rights leaders worried that the partnership -- which allows specially trained officers at the Clark County Detention Center to identify immigration violators and place immigration holds on them -- targets Hispanics, could lead to racial profiling and makes people afraid to report crimes.

"Police officers should be focused on keeping the community safe, not enforcing petty crimes in the hopes that their target may be deportable," said Maggie McLetchie, an attorney with the American Civil Liberties Union of Nevada.

Las Vegas police insist the arrests on minor charges do not violate the department's stated intent to target only illegal immigrants who have committed violent crimes. That's because a person who is arrested for jaywalking, for example, would only be referred to ICE if they had a police record that included a violent crime, police said.

"You may have a guy who got arrested for jaywalking, but it wasn't jaywalking that got him deported," said Officer Jacinto Rivera, a police spokesman. "It was his prior history of robbery and kidnapping."

McLetchie said she is concerned some "overzealous" police officers could use "low-level arrests as a way to get people in the door" for eventual deportation.

"Some of these are arrests for things that shouldn't even be crimes," she said. "I don't think anybody wants to live in a police state where people are getting hauled off to jail because they look like they might be undocumented."

The partnership between the Department and ICE, dubbed "287(g)" after the corresponding section of the federal Immigration and Nationality Act, is one of dozens of such agreements with law enforcement agencies in 26 states. It lets local law enforcement hold deportable inmates after they otherwise would be released so immigration officials can take custody of them.

The local partnership began in November 2008.

In its first 18 months, local corrections officers placed immigration holds on more than 3,300 inmates, according to booking records the department provided to the Review-Journal.

More than a third of those inmates were arrested on misdemeanor charges, including fishing without a license, sleeping in public, possessing an unregistered animal and "walking on side of road."

Rivera said such arrests are typically part of police checkpoints or targeted policing in high-crime areas.

"If it's a hot area, anyone who commits any crime there, we are going to be effecting an arrest," he said. "If you are in an area known for violence or narcotics, and you have a history of that, you'll get arrested for jaywalking."

Rivera said officers have no interest in hassling or arresting illegal immigrants who have committed no other crimes.

He noted that police chose not to place immigration holds on at least 2,300 inmates found to be in the country illegally during the partnership's first 18 months, because they had no prior criminal history and had been booked on only minor charges.

"Cops want to catch guys who are preying on people," Rivera said.

"When you go home at night, you want to know the individual you put in jail means a victim won't be victimized tonight. If that (being in the country illegally) is their only crime, it makes no difference to the overall safety of the community."

As for targeting people for arrest just because they are Hispanic or might be illegal immigrants, Rivera said, "We can't do that. We don't have the power."

Clark County Sheriff Doug Gillespie has said he supports the 287(g) partnership because it targets violent criminals and because federal officials aren't adequately enforcing immigration laws.

Gillespie emphasized that a person's immigration status will be checked only after that person has been arrested on other charges.

Arizona immigration law unlikely to survive federa...
Arizona's next ugly battle: citizenship for immigr...
POLICE ARRESTS: Misdemeanor violations leading to ...
Local lawmakers plan immigration bills, despite Ar...
UNHCR Urges Countries To Resettle Refugees In Acut...
DREAM Act receives renewed interest in immigration...
▶ 2009 (160)

Before the agreement, local officers did not have the ability to check the immigration status of inmates and had to rely on ICE to investigate and place detainers on potential immigration violators.

ICE did so only sporadically, and many deportable inmates would be released in the meantime, police said.

The department spends $1.3 million a year to staff the 287(g) program.

ICE deported 1,897 of the inmates referred by local correction officers between November 2008 and May 2010, the agency said. Other inmates may still be awaiting final decisions in immigration court. Those proceedings can drag on for months or even years.

Programs such as 287(g) tend to have a chilling effect on the immigrant community, said Peter Ashman, a local immigration attorney who also is a member of the board of the local ACLU.

"Many law enforcement agencies have taken a pass on 287(g) because they know it's going to make it difficult for them to have good relationships with local immigrant communities," Ashman said. "It damages that relationship and makes us all less safe."

The local 287(g) partnership was unnecessary, he said.

"The argument was it would be used to get rid of dangerous criminals. We were doing that already."

But Ashman said controversy over the local partnership has faded somewhat over time, because there is "no evidence police haven't held true to their word that this was only going to be an inside-the-station enforcement tool."

"If somebody has been convicted of a serious crime and should have been deported before, it's kind of hard to argue that they shouldn't get deported now," he said.

Of the inmates local corrections officers referred to ICE, 17 percent had been deported before, according to police records.

The majority of inmates were citizens of Mexico, but they also came from the United Kingdom, Poland, Russia, Italy, China, Vietnam and other countries.

Contact reporter Lynnette Curtis at lcurtis@reviewjournal.com.

Posted by Center for Intercultural Organizing at 11:35 PM
Labels: 287(g) program, Deportation, Detention, Enforcement of Immigration Laws, Immigration and Customs Enforcement, Nevada, Undocumented Immigrants

## Video Bar



powered by
YouTube

Center for Intercultural Organizing

## Subscribe To

Posts
Comments

## Followers

Follow
with Google Friend Connect

Followers (1)



Already a member? Sign in

0 comments:

Post a Comment

Comment as: Select profile...

[Post Comment] [Preview]

Newer Post         Home         Older Post

Subscribe to: Post Comments (Atom)

# EXHIBIT 3

# EXHIBIT 3

```
Type of Work:          Text

Registration Number / Date:
                       TX0007181503 / 2010-07-26

Application Title: Misdemeanor violations leading to deportations.

Title:                 Misdemeanor violations leading to deportations.

Description:           Electronic file (eService)

Copyright Claimant:
                       Righthaven LLC, Transfer: By written agreement.

Date of Creation:      2010

Date of Publication:
                       2010-06-28

Nation of First Publication:
                       United States

Authorship on Application:
                       Stephens Media LLC, employer for hire; Domicile: United
                           States; Citizenship: United States. Authorship: text.

Rights and Permissions:
                       Chief Operating Officer, Righthaven LLC, 9960 West Cheyenne
                           Avenue, Suite 210, Las Vegas, NV,  89129-7701, United
                           States, (702) 527-5900, dbrownell@righthaven.com

Names:                 Stephens Media LLC
                       Righthaven LLC

================================================================================
```