CHAD A. BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorney for *Amicus Curiae*
PROFESSOR JASON SCHULTZ

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br>v.<br><br>CENTER FOR INTERCULTURAL ORGANIZING, a not-for-profit Oregon entity, and KAYSE JAMA, an individual,<br><br>Defendants. | CASE NO.: 2:10-cv-01322-JCM-LRL<br><br>**BRIEF OF *AMICUS CURIAE*<br>PROFESSOR JASON SCHULTZ** |

## ***AMICUS CURIAE* BRIEF**

**I.     INTRODUCTION**

*Amicus Curiae* Professor Jason Schultz ("*Amicus*") is an Assistant Clinical Professor of Law and the co-director of the Samuelson Law, Technology & Public Policy Clinic at the University of California's Boalt Hall School of Law.[1]  *Amicus* submits this brief concerning the Court's Order To Show Cause ("OSC") why this action should not be dismissed on fair-use grounds.  While *Amicus* does not take any position about whether the Court should dismiss Righthaven LLC's ("Righthaven") case *sua sponte* at this juncture, *Amicus* submits this brief to clarify the proper legal standards under section 107 of the Copyright Act and to correct misstatements contained in Righthaven's OSC submission.

A fair-use inquiry balances four statutory factors.  *See* 17 U.S.C. § 107.  Righthaven, however, asks this Court to ignore those traditional factors and embrace an inflexible, one-factor test that prohibits a fair-use finding whenever an entire copyrighted work is used.  That approach finds no support in the text and purposes of the Copyright Act and the cases interpreting it.  Indeed, the Supreme Court, the Ninth Circuit, and this Court have all found the use of entire copyrighted works to be consistent with the fair-use doctrine.  Those rulings recognize that copyright law balances two important public interests:  promoting creative expression and encouraging the use of copyrighted works for socially beneficial purposes.

A fair-use ruling in favor of the Center For Intercultural Organizing ("CIO") would strike the correct balance.  CIO's noncommercial purpose is manifest; it is a non-profit entity that advocates on behalf of immigrants and refugees through grass-roots organizing and education.  It posted a short news article on its website to advance its educational mission.  The highly factual work at issue receives very little protection in a fair-use analysis.  And CIO has not harmed that market for, or value of, the work in any way.  Given all of that, the Court's apparent skepticism about whether this case should proceed in light of the fair-use doctrine is well founded.

---

[1] Professor Schultz submits this brief on his own behalf, not on behalf of the Samuelson Law Clinic or the Boalt Hall School of Law.  His counsel represents defendants in two other actions pending in this court that have been filed by Righthaven.  *See* Case Nos. 10-cv-01343, 10-cv-01356.

## II. BACKGROUND

Righthaven sued CIO, an Oregon non-profit organization, on August 5, 2010 alleging copyright infringement in a Las Vegas Review-Journal ("LVRJ") article of approximately 1,000 words written by Lynnette Curtis entitled "POLICE ARRESTS: Misdemeanor violations leading to deportations." Compl., Ex. 1 (the "Curtis Article"). Righthaven did not create the Curtis Article, but claims ownership based on an assignment from the LVRJ. Compl., Ex. 3. The Curtis Article was and is available to the public for free on the LVRJ website. *See* http://www.lvrj.com/news/questions-generated-by-287-g--97289294.html. Righthaven contends that CIO posted the Curtis Article on its "Immigrant and Refugee Issues in the News" blog. Compl, Ex. 2. On November 15, 2010, this Court issued the OSC. Righthaven responded on November 29, 2010.

## III. ARGUMENT

When evaluating fair use, courts examine four statutory factors and equitably balance them to determine whether the challenged use is compatible with the purposes of the Copyright Act. Giving undue weight to any single factor undermines that balancing. Here, Righthaven relies on the same argument for each factor: that use of an entire work precludes a fair-use finding. That is wrong. The "amount and substantiality" factor is simply one guidepost. But the Court also must look independently to the nature of the work, the nature of the use, and the use's effect on the market for the work. Indeed, courts at all levels have found fair use when an entire copyrighted work has been used. A faithful analysis of the statutory factors reveals that CIO's use of the Curtis Article was fair. CIO educated its members about immigrant and refugee rights without harming the market for, or value of, the original work.

### A. The Court Should Equitably Balance Four Statutory Factors When Making A Fair-Use Determination.

Righthaven advocates for a rule stating that the use of an entire copyrighted work cannot constitute fair use.[2] That position conflicts with first principles of fair-use law. All four

---

[2] *See* Righthaven OSC Response at 7 (labeling use of the entire work a "transcendent fact"), 8 (urging the Court to conduct the fair use analysis "in view of" CIO's use of the entire work), 11 (claiming that the
(continued...)

-3-

statutory factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). In doing so, courts rigorously avoid bright-line tests. *See Campbell*, 510 U.S. at 577 ("The task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis."); *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 448-49 (1984) (the fair-use doctrine "enable[s] a court to apply an equitable rule of reason" to copyright infringement claims) (internal quotations and citations omitted); *Perfect 10 v. Amazon.com*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("We must be flexible in applying a fair use analysis . . . .").

Righthaven's proposed test also cannot be reconciled with a series of cases finding fair use where entire works have been used. In *Sony*, the court found fair use in the wholesale reproduction of television programs. *See Sony*, 464 U.S. at 454-55. That was appropriate because recording television shows using a VCR did not harm the market for the works at issue and therefore prohibiting the practice would "inhibit access to ideas without any countervailing benefit." *Id.* at 451. The Ninth Circuit has twice found fair use when search engines used entire photographs for commercial purposes. *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 815 (9th Cir. 2003); *Perfect 10 v. Amazon.com*, 508 F.3d 1146 (9th Cir. 2007).[3] Copying the entire work in that circumstance is reasonable given the socially valuable purpose of allowing consumers to find information on the Internet. *See Kelly*, 336 F.3d at 820-21; *Amazon*, 508 F.3d at 1165. And this court concluded that fair use protected Google's commercial copying of 51 copyrighted works in their entirety. *Field v. Google Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006). The Supreme Court, the Ninth Circuit, and this court are not alone in finding fair use when an entire

---

(...continued from previous page)
"purpose and character of the use" factor should be evaluated "in view of" CIO's use of the entire work), 16 (arguing under the "nature of the work" factor that "the act of copying the Work in its entirety also weighs against a finding of fair use"), 17-18 (arguing that the "effect on the market" factor is informed by CIO's use of the entire work).

[3] Righthaven's analysis relies heavily on *Worldwide Church of God v. Philadelphia Church of God*, 227 F.3d 1110 (9th Cir. 2000). But that case does not stand for the broad proposition that use of an entire work precludes a fair-use finding. *Id.* at 1118 (recognizing that "'wholesale copying does not preclude fair use per se'") (quoting *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1155 (9th Cir. 1986)).

work has been used. *See, e.g., Nuñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) (use of an entire photograph "of little consequence to our [fair-use] analysis"); *Bond v. Blum*, 317 F.3d 385, 393 (4th Cir. 2003) (use of an entire book protected by fair use); *A.V. v. iParadigms, LLC*, 562 F.3d 630, 642 (4th Cir. 2009) (use of student papers protected by fair use).

As a threshold matter then, the Court should reject Righthaven's invitation to apply a rigid test under which fair use cannot be found where an entire work is used.

**B.     The Four Factor Test Supports A Fair-Use Finding.**

With those principles in mind, an equitable balancing of the four statutory factors supports a fair-use finding in this case.

**Purpose and Character of the Use**: CIO, a non-profit group, used the Curtis Article to educate those concerned with immigrant and refugee rights about evolving issues in that area and to create an archive of related information. Readers of CIO's "Immigrant and Refugee Issues in the News" blog are most likely Oregon residents interested in the non-profit's mission. *See* http://www.interculturalorganizing.org/what-we-do/civic-engagement ("Our civic engagement program empowers immigrants and refugees throughout the Portland Tri-County region to develop a unified voice, advocate for their rights, and create an environment in which they are recognized and supported as valued community members."). In contrast, the LVRJ published the Curtis Article to provide timely, generalized information to Las Vegas residents about events in their local community. It is highly improbable that anyone who would have otherwise purchased a paper copy of the LVRJ or visited its website chose not to because of CIO's blog post. CIO's use of the Curtis Article expanded public knowledge about immigration enforcement without cannibalizing the market for the original work. That use strongly supports a fair-use finding. *Sony,* 464 U.S. at 454 ("to the extent time-shifting expands public access to freely broadcast television programs, it yields societal benefits"); *Field*, 412 F. Supp. 2d at 1119 (finding fair use where Google's cache of works served "different and socially important purposes" than the original works).

Righthaven's vigorous reliance on the Ninth Circuit's *Worldwide Church of God* decision betrays the weakness of its position on the first factor. In that case, a church owned the

-5-

copyright in a 380-page book written by its founder entitled "Mystery of the Ages." *Worldwide Church of God*, 227 F. 3d at 1112. The church stopped distributing the book when certain of its doctrines changed. *Id*. at 1113. A splinter group countermanded that directive by printing and distributing 30,000 copies of "Mystery of the Ages." *Id*. When the new group ignored the church's cease-and-desist letter, the church filed a copyright infringement action. *Id*. The splinter group made no attempt to claim that its use was transformative or served some different purpose than the original work. Instead, the group merely relied on its non-profit status as a defense. That was unavailing. By distributing "Mystery of the Ages" in bulk, the splinter group was able to draw thousands to its congregation, and those members tithed 10% of their income to the new church. *Id*. at 1118.

*Worldwide Church of God* does not help Righthaven. First, CIO's use of the short Curtis Article serves a different purpose than the original work by providing an archive of information to its members concerning the specialized topic of immigrant and refugee rights. *See Amazon*, 508 F.3d at 1165 ("making an exact copy of a work may be transformative so long as the copy serves a different function than the original work"). Second, CIO's use was non-commercial. Indeed, CIO did not profit in any way because the Curtis Article appeared on its blog. Righthaven engages in a tortured analysis to suggest otherwise. It asserts that since users can make donations on the CIO website, and because the Curtis Article also appeared on the website, "there can be no dispute that [CIO's use] was motivated, at least in part, by commercial gain." Righthaven OSC Response at 14. That analysis fails to account for basic causation principles. To demonstrate that CIO profited by using the Curtis Article, Righthaven would need to show that some user gave money to the CIO because the article was available on the CIO website. Righthaven would never be able to make that showing for a single person, let alone a substantial group. It cannot demonstrate that CIO "profited" by using the Curtis Article under any rational understanding of that term.

**Nature of the Work**: The Curtis Article inherently is not entitled to very much protection because it is short and largely reports facts. *Sony*, 464 U.S. at 496-97 ("informational works, such as news reports, that readily lend themselves to productive use by others, are less

protected than creative works of entertainment."); *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 563 (1985) ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy."); *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997) (video of the Reginald Denny beating was "informational and factual and news," and therefore the "nature of the work" factor weighed "substantially" in favor of fair use). Moreover, the article has been removed from its usual habitat. It is not owned by a newspaper, but has been assigned to a company that does not publish news stories, but uses them exclusively to file infringement lawsuits. That practice has a chilling effect on potential fair uses of Righthaven-owned articles, diminishes public access to the facts contained in them, and does nothing to advance the Copyright Act's purpose of promoting artistic creation. When a copyrighted work is simply an instrumentality for litigation, it is properly granted the lowest possible amount of protection against a fair-use claim.

**Amount and Substantiality**: While the entire work was used here, that was reasonable to fulfill CIO's mission: to educate stakeholders about a wide range of immigrant-rights issues and to archive that information in one place. It would have been impractical to elevate one fact contained in the Curtis Article over another when reporting the article's findings given its short length. *See* Compl., Ex. 2. *Worldwide Church of God* does not compel a different result. While the Ninth Circuit found that use of an entire book weighed against fair use in that case, it did so by distinguishing *Sony*'s finding that copying an entire work was appropriate because viewers had been invited to watch television programs "in [their] entirety free of charge." *Worldwide Church of God*, 227 F.3d at 1118 (quoting *Sony*, 464 U.S. at 449-50). Here, the entire Curtis Article was and remains available to viewers in its entirety free of charge.[4]

---

[4] Through a toolbar on the lvrj.com website, readers are invited to read the article free of charge *and without any advertising* by clicking on the "print this" icon on the top of the page where the article appears. *See* http://www.lvrj.com/news/questions-generated-by-287-g--97289294.html, linking to http://www.printthis.clickability.com/pt/cpt?action=cpt&title=POLICE+ARRESTS%3A+Misdemeanor+violations+leading+to+deportations++-++News+-+ReviewJournal.com&expire=&urlID=429773937&fb=Y&url=http%3A%2F%2Fwww.lvrj.com%2Fnews%2Fquestions-generated-by-287-g--97289294.html&partnerID=192612&cid=97289294.

**Effect on the Value and Market**:  This factor balances the benefit the public will derive if the use is permitted and the personal gain that the copyright owner will receive if the use is denied.  *See MCA, Inc. v. Wilson*, 677 F.2d 180, 183 (2d Cir. 1981).  The public benefits from CIO's use of the article by gaining knowledge about immigrant-rights issues.  *Sony*, 464 U.S. at 451 (accepting fair use because a contrary result would "inhibit access to ideas without any countervailing benefit.").   And the market for the Curtis Article is not harmed by CIO's use.  In fact, there is no market for the work at all because it is owned by Righthaven, a company that does not publish news stories, but files copyright infringement lawsuits based on assigned copyrights as its exclusive business model.  *See Field*, 412 F. Supp. 2d at 1121 (fourth factor supported fair use where there was no evidence of any market for plaintiff's made-for-litigation writings); http://www.wired.com/threatlevel/2010/07/ copyright- trolling- for- dollars (Righthaven's "sole purpose" is "suing blogs and websites").[5]  And even before the LVRJ assigned the copyright to Righthaven, CIO did not harm the market for the work.  The LVRJ elected to give the Curtis Article away for free on the Internet and continues to do so to this day.  Given this, it is difficult to fathom a scenario in which the LVRJ could have been harmed by CIO's use.  At most, the LVRJ might have been deprived of a few pennies, but the law does not concern itself with such trifles.  *See Sony*, 464 U.S. at 451 n. 34 (noting the "partial marriage between the doctrine of fair use and the legal maxim *de minim[i]s non curat lex*" when the use of a work does not harm the copyright holder) (internal quotation and citation omitted).

---

[5] Righthaven appears to be making an argument similar to the one advanced in its Opposition to defendant's Motion to Dismiss in *Righthaven v. Realty One Group*, Case No. 10-1036-LRH-PAL.  There, Righthaven argued that the market-harm factor is not plaintiff-specific.  *See* Case No. 10-1036 Dkt. 12 at 14 n.7 (arguing that the market-harm factor "does not specifically consider the effect of the use upon the potential market for **the plaintiff's** use of the copyrighted work") (emphasis in original). That is mistaken. In fair-use cases, courts examine the effect the use will have on the copyright owner's market for the work.  *See Mattel v. Walking Mountain*, 353 F.3d 792, 805 (9th Cir. 2003) (examining "the personal gain *the copyright owner* will receive if the use is denied.") (emphasis added) (citation and internal quotation omitted); *accord Sony*, 464 U.S. at 450 (examining whether the use would "impair *the copyright holder's* ability to obtain the rewards that Congress intended him to have.") (emphasis added); *Kelly*, 336 F. 3d at 821 ("Arriba's use of Kelly's images also would not harm *Kelly's ability* to sell or license his full-sized images.") (emphasis added).  This Court subsequently granted the motion to dismiss in *Realty One* on fair use grounds.  *Righthaven LLC v. Realty One Group, Inc.*, Case No. 10-1036, 2010 WL 4115413 (D. Nev. Oct. 19, 2010).

There is a dearth of evidence or even allegations showing any actual harm to Righthaven. The best that it can muster is to claim a "presumption" of harm based on CIO's alleged commercial use of the Curtis Article. But CIO's use was not commercial. There is no presumption of harm for transformative uses like CIO's. *See Amazon.com, Inc.*, 487 F. 3d at 725. And the application of any "presumption" of market harm is not appropriate in a situation, like here, where the owner of the copyright is an assignee who is not using the work for anything beyond filing lawsuits. *Cf. eBay Inc. v. MercExchange, LLC,* 547 U.S. 388 (2006) (rejecting Federal Circuit rule allowing patent holders who do not make products but instead do nothing but file lawsuits from automatically being entitled to an injunction and a finding of irreparable injury upon a judgment of patent infringement). Righthaven cannot create market harm out of thin air by labeling CIO's use "commercial," invoking nonexistent presumptions, or opining on the general decline of the newspaper industry.

## IV. CONCLUSION

A proper analysis of the statutory factors under section 107 of the Copyright Act reveals that CIO's use of the Curtis Article falls within the doctrine of fair use.

Dated: December 14, 2010

Respectfully submitted,

CHAD A. BOWERS, LTD.

By: /s/ Chad Bowers
Chad A. Bowers
NV State Bar Number 7283
3202 W. Charleston Blvd.
Las Vegas, Nevada 89102

*Attorneys for* Amicus Curiae *Professor Jason Schultz*