SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 683-4788
Fax: (702) 922-3851

J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
*Assistant General Counsel at Righthaven LLC*
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
jchu@righthaven.com
*Staff Attorney at Righthaven LLC*
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900

*Attorneys for Plaintiff Righthaven LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company, | Case No.: 2:10-cv-01322-JCM-LRL |
| Plaintiff, | **REPLY IN SUPPORT OF PLAINTIFF'S REPONSE TO ORDER TO SHOW CAUSE** |
| v. | |
| CENTER FOR INTERCULTURAL ORGANIZING, a not-for-profit Oregon entity; and KAYSE JAMA, an individual, | |
| Defendants. | |

        Plaintiff Righthaven LLC ("Righthaven") hereby submits the instant Reply (the "Reply")

in Support of its Response to the Order to Show Cause (the "Response"; Docket No. 14-0) why

Righthaven's copyright infringement claim against Defendants Center for Intercultural Organizing ("CIO") and Kayse Jama ("Mr. Jama"; collectively with CIO known herein as the "Defendants") should not be dismissed under the 107 U.S.C. § 107 Fair Use exception. Righthaven's Reply based on the pleadings and papers on file in this action, any oral argument allowed by this Court, and on any other matter of which this Court takes notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The Defendants' fair use argument fails because: (1) Righthaven clearly prevails on each of the four fair use prongs; (2) the Defendants' revealingly ignore the critical absence of any transformative use; and (3) the Defendants' act of blatant copyright infringement is not excused solely because of CIO's non-profit status.  Ultimately, the Defendants seek to divert the Court's attention away from the proper inquiry by asserting unmeritorious, procedurally improper arguments and by offering self-serving, arbitrary interpretations of relevant case law.  Such erroneous, unsubstantiated efforts fail to undermine the arguments set forth in Righthaven's Response to this Court's Order to Show Cause (Docket No. 12-0).

Apparently, the Defendants are of the belief that their status as a non-profit organization precludes any possibility of bearing liability for infringement.  However, as demonstrated by the Supreme Court and as echoed by the Ninth Circuit, an infringer's non-profit or educationally-motivated status does not, standing alone, create a blanket exemption from liability.  *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 584 (1994); *Worldwide Church of God v. Philadelphia Church of God, Inc.,* 227 F.3d 1110, 1121 (9th Cir. 2000) ("*Worldwide Church*").  Instead, this near exclusive reliance upon CIO's non-profit status is reflective of the Defendants' efforts to avoid a complete analysis of the collective fair use factors.

Ultimately, and specifically addressing the Defendants' arguments, all four fair use factors fall heavily in Righthaven's favor: (1) the Defendants' verbatim infringement (the "Infringement"; Compl. Ex. 2.) contains no transformative value whatsoever; (2) the infringed,

Righthaven-owned literary work (the "Work"; Compl. Ex. 1.), though largely based in news reporting, is the product of extensive creativity and originality; (3) the Infringement constitutes a verbatim, wholesale copy of the Work in its entirety; and (4) by no means did the Defendants' unauthorized exploitation of the Work have some sort of beneficial effect on the Work's value. Importantly, the Defendants' arguments with respect to these issues highlight the various factual discrepancies – and the potential need for discovery to address said discrepancies – at issue in this lawsuit.  Moreover, the Defendants fail to even address, in any capacity, the Infringement's (complete lack of) transformative value, and only minimally address the holistic nature of their unauthorized reproduction.

The Defendants' remaining contentions are similarly unfounded.  The Defendants' implied license argument is clearly procedurally improper: the assertion of an implied license theory is entirely non-responsive to the Court's Order to Show Cause concerning fair use. Additionally, the Defendants' implied license theory is so far-fetched, it defies hundreds of years of copyright law and does not remotely approach providing a legitimate basis for dismissal.

Furthermore, Righthaven is surprised that the Defendants choose to cite this Court's recent holding in *Righthaven LLC v. Realty One Group, Inc., et al.,* (D. Nev.) 2:10-cv-1036-LRH-PAL ("*Realty One*"), particularly because *Realty One*, as applied to the facts of ***this*** case, is actually favorable to Righthaven's position. Unlike the present action, *Realty One* involved an infringement of approximately 30% of the protected literary work.  This integral, distinguishing fact arguably proved dispositive to this Court's *Realty One* analysis: the *Realty One* Court emphasized that the defendants' infringement did "not satisfy a reader's desire to view and read the article ***in its entirety***," and that readers were appropriately "***directed . . . to the full text of the Work*** [on the LVRJ website]." *Realty One,* 2:10-cv-1036-LRH-PAL, slip op. at 4 (Oct. 19, 2010) (emphasis added).  Contrarily, the Infringement at present is merely a copied-and-pasted reproduction of the entire Work, precluding the need for the reader to view the Work's content in any medium other than the CIO website.  This significant factual distinction renders the *Realty One* holding largely inapplicable to the present litigation.  Most importantly, Righthaven respectfully, yet adamantly, disagrees with the *Realty One* holding, and anticipates a procedural

posture in the near future whereby the Court's fair use holding will be appealable to the Ninth Circuit.

Summarily, under the present facts, a *sua sponte* dismissal of this lawsuit would run counter to the venerable precedent governing fair use.  The Defendants' arguments must be rejected accordingly.

## II.    ARGUMENT

### A. *Righthaven Prevails on Each Fair Use Factor*

As plainly established by Righthaven in the Response, each of the four fair use factors[1] definitively falls in Righthaven's favor, and the unfounded arguments set forth in the Defendants' Opposition fail to prove otherwise.  The Defendants' inability to put forth a viable fair use argument is accentuated by the Defendants' decision to briefly gloss over, if not outright ignore, considerations vital to the fair use analysis.  A portrayal of these conspicuous omissions, along with a concise analysis of the remaining fair use factors, is as follows.

#### 1. *CIO's Non-Profit Status Does Not Excuse the Defendants' Non-Transformative, Verbatim Reproduction of the Work*

##### a. *Non-Profit Status, Standing Alone, Does Not Sway the First Fair Use Factor in the Defendants' Favor*

The Defendants' near exclusive reliance upon CIO's status as a non-profit entity does not sway the first prong of the fair use analysis in the Defendants' favor.  The Defendants dedicate two separate sections of the Opposition to this argument, perhaps as a means of diverting the Court's attention from the balance of the relevant facts, all of which weigh against a finding of fair use. (*See* Defs.' Opp'n 6-7, 9-10)  However, this strategy fails because: (1) a defendant's

---

[1] "In determining whether the use made of a work in any particular case is a fair use the fair use factors to be considered include: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

4

non-profit status or educational motive does not somehow provide a blanket exemption from liability for infringement, and (2) whether a defendant is motivated by non-profit, educational purposes is only *part* of the court's consideration within just *one* of the four prongs of the fair use inquiry (*see* 17 U.S.C. § 107), and the Defendants notably fail to address the first prong's remaining considerations.

Venerable law dictates that an infringer cannot hide behind its non-profit or educational status as a basis for avoiding the consequences of infringement.  As the Supreme Court succinctly explained in *Campbell*:

> The language of the statute makes clear that the commercial or nonprofit educational purpose of a work is only one element of the first factor enquiry into its purpose and character. Section 107(1) uses the term "including" to begin the dependent clause referring to commercial use, and the main clause speaks of a broader investigation into "purpose and character." . . . Accordingly, the mere fact that a use is educational and not for profit does not insulate it from a finding of infringement, any more than the commercial character of a use bars a finding of fairness.

*Campbell,* 510 U.S. at 584 (emphasis added).

Since *Campbell*, the Supreme Court's position on this issue has been expressly adopted by the courts, including the Ninth Circuit. *See, e.g., Worldwide Church,* 227 F.3d at 1121 (citing *Campbell* and holding non-profit defendant liable for infringement, rejecting fair use argument). The same reasoning should be applied in the instant matter.  The Defendants' blatant act of wholesale copyright infringement cannot be insulated from legal consequence, regardless of the Defendants' efforts to appeal to the Court's philanthropic and educational sensitivities.  The Supreme Court made this unequivocally clear in *Campbell*, and there is no reason to deviate from this principle at present.

Ultimately, the Defendants' status as an alleged non-profit entity should not diminish the fact that the Infringement is merely a non-transformative, holistic reproduction of the entire Work, reproduced in an identical medium (the Internet) and exposed to an identical audience (public viewers).  To illustrate: an Internet user performing a Google search for the Work's content may well have been directed to the CIO website rather than being rightfully directed to the Work's original source, the LVRJ website.  Such a consequence of the Defendants'

5

Infringement should not somehow be alleviated simply because CIO represents itself to be a non-profit entity.  In this context, CIO's status as an alleged non-profit is only marginally relevant to the overall analysis. *See Newport-Mesa Unified School District v. State of California Department of Education,* 371 F. supp. 2d 1170, 1177 (C.D. Cal. 2005) (*quoting Campbell,* 510 U.S. at 584).  Perhaps, under a different set of facts – wherein the Defendants distributed only a small portion of the Work to a discrete, limited, subscriber-based audience, and said distribution was supplemented by the Defendants' transformative, educationally-motivated comments and creative framework – such heavy reliance upon non-profit status might give rise to a meaningful fair use analysis.  While this scenario would still not amount to fair use, a reproduction of this nature would be drastically distinguishable from the present action, wherein the Defendants' widely distributed, verbatim Infringement greatly diminishes the significance of their alleged non-profit status.

### b.  *The Infringement Contains No Transformative Value*

The Defendants' near exclusive reliance upon CIO's non-profit status is further marginalized by the Defendants' total failure to discuss the issue most pertinent to the first prong of the fair use analysis.  In fact, the "central purpose" of the first prong's analysis is to determine "whether and to what extent the new work is transformative." *Worldwide Church,* 227 F.3d at 1117 (*quoting Campbell,* 510 U.S. at 579).  Simply stated, the Defendants' decision not to address the Infringement's "transformative" value is highly revealing; the Defendants prudently chose not to engage in a dispute that, in light of the evidence, is virtually unwinnable.

No reasonable argument can be made that the Defendants' Infringement contains any transformative value.  As detailed in Righthaven's Response, the Infringement is nothing more than a copied-and-pasted, verbatim reproduction of the Work, which altogether fails to "add something new, with a purpose or different character, altering the first with the new expression, meaning, or message." *Los Angeles News Serv. v. CBS Broadcasting, Inc.,* 305 F.3d 924, 938 (9th Cir. 2002); *quoting Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994).

The Defendants' preference that the Court **not** focus on this utter lack of transformative value is understandable, as the Supreme Court has established that "the more transformative the new work, the less will be the significance of the other factors, like commercialism, that may weigh against a finding of fair use." *Campbell,* 510 U.S. at 579.  Accordingly, logic dictates that when an unauthorized reproduction – such as the Defendants' reproduction – is entirely non-transformative, the legitimacy of a fair use claim is greatly diminished, regardless of the court's analysis of the remaining prongs (though, in this case, each remaining prong similarly favors Righthaven).

### c. *Determination of the Infringement's Transformative Value Gives Rise to a Genuine Issue of Material Fact*

Notwithstanding the preceding argument, the Court's inquiry into the first fair use factor undoubtedly gives rise to a genuine issue of material fact, thereby precluding dismissal (or summary judgment in Defendants' favor) absent an opportunity for discovery.  The extent (or non-existence) of the Infringement's transformative qualities, along with the commercial and non-monetary benefits derived by the Defendants' as a result of the Infringement, are both questions of fact deserving of investigation.  As no depositions have been taken, no documents have been produced, and not a single interrogatory has been propounded by either party, it would be fundamentally unfair to dismiss this action at this early stage without first permitting necessary discovery.  This principle has been echoed by courts across the country. *See, e.g., Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 (11th Cir. 1997) (resolution of motions to dismiss turning on questions of fact may require discovery before meaningful rulings can be made); *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.,* 898 F.2d 946, 950 (3d Cir. 1990) (vacating summary judgment because "a factual record should be developed through discovery as a basis for resolving questions of disputed issues of material fact"); *In re Cases Filed by DIRECTV, Inc.,* 344 F. Supp. 2d 647, 655-56 (D. Ariz. 2004) (discovery appropriate when presented with questions of fact which cannot be decided on a motion to dismiss).  Ultimately,

1  the Court should not be forced to rule on fact-contingent issues at a stage in which the factual

2  record remains largely incomplete.

3

4          ## 2.   *The Work Contains Extensive Originality and Creative Expression*

5          The Work, though admittedly fact-based, was comprised as a result of considerable

6  creative efforts by its author, Lynette Curtis.  The Defendants contend that "[e]very news report

7  requires its author to structure and present facts to its reader," (Defs Opp'n 8:18-19) thereby

8  suggesting that the Work is no different from any other news article comprised of a thoughtless

9  factual recitation.  This claim shortsightedly ignores the extent of journalistic efforts required of

10  Ms. Curtis to put together this particular story.  Specifically, the Work details the perceived

11  targeting of illegal immigrants by the Las Vegas Metropolitan Police Department ("LVMPD")

12  and the volume of deportations resulting therefrom. (*See* Compl. ¶ 13.) (Compl. Ex. 1.)  The

13  Work cites statements made by Clark County Sheriff Doug Gillespie, LVMPD spokesman

14  Jacinto Rivera, Las Vegas-based attorney for ACLU Nevada Maggie McLetchie, and local

15  immigration attorney Peter Ashman. (Compl. Ex. 1.)  The Work further references local

16  deportation statistics, LVMPD policies concerning illegal immigrant criminals, and the local

17  partnership between LVMPD and U.S. Immigration and Customs Enforcement. (Compl. Ex. 1.)

18  It is reasonable to believe that the wealth of information contained in the subject article was not

19  available to the author prior to her excessive investigations and interviews.  In addition to

20  gathering said information, Ms. Curtis was also required to organize this content in a concise and

21  readable fashion in order to best communicate her story to LVRJ readers.  Such efforts hardly

22  lack creativity and original expression.[2]

23          Applicable case law supports Righthaven's position.  As explained by the Supreme

24  Court, The "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality."

25  *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 547 (1985) ("*Harper &*

26  *Row*").  Moreover, written news articles reflect the reporter's creative endeavors in compiling a

27
28  [2] Again, the extent of originality and creative expression arising from the Work's creation gives rise to an issue of material fact, not appropriately subject to dismissal (or summary judgment) absent discovery. *See Chudasama,* 123 F.3d at 1367.

8

piece for dissemination.   As noted by one court, "a news reporter must determine which facts are significant and recount them in an interesting and appealing manner." *Los Angeles Times v. Free Republic,* 54 U.S.P.Q.2d 1453, 1467 (C.D. Cal. Apr. 4, 2000).  This theory certainly holds true in this case, wherein the Work would not exist but for the substantial creative efforts of its author.  Such creativity cannot be ignored, or used as a platform for a fair use argument, simply because it was published in a daily newspaper.  To hold otherwise would suggest that nearly all articles published in newspapers would be precluded from copyright protection simply because of an arbitrary classification of these articles as fact-based.  The Court should not reach such an unjust conclusion.

### 3.   *The Defendants' Explanation for Copying the Entire Work is Illogical*

First, the verbatim, holistic nature of the Defendants' reproduction must be reiterated: the Defendants copied, on an unauthorized basis, *every single word of the Work* as it was originally published. (*See* Compl. Ex. 1-2.)  In light of such wholesale copying, the viability of the Defendants' reliance on fair use as a defense for the infringing conduct is substantially diminished.  The courts have clearly established that while verbatim, wholesale copying does not altogether preclude a finding of fair use, it certainly "militates against such a finding." *Am. Geophysical Union v. Texaco Inc.,* 60 F.3d 913, 926 (2d Cir. 1994); *see also Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1155 (9th Cir. 1986).  Thus, in the present matter, in order to justify their act of verbatim copying, the Defendants must demonstrate why it was essential to infringe upon the Work in its entirety. *See Campbell,* 510 U.S. at 587-88 (the court must determine whether the extent of the copying is consistent with the defendant's intended use).  The Defendants have wholly failed to do so.

The explanation offered by the Defendants for their decision to reproduce the Work in its entirety is entirely illogical and arguably disingenuous.  The Defendants claim that "CIO posted the Article on a blog to encourage its readers to comment and critique law enforcement's approach to dealing with non-violent, illegal immigrants." (Defs. Opp'n 9:9-10)  However, this explanation curiously ignores the Defendants' most viable, non-infringing option: ***the***

***Defendants could have posted merely the title of the Work and perhaps the first sentence, along with a brief summary of the Work's content along with a hyperlink leading to the Work on the LVRJ website.*** This would have allowed to Defendants to accomplish the exact same goal as that stated in the Opposition. In other words, the Defendants would have drawn the attention of its viewers to the Work's content without simultaneously engaging in blatant copyright infringement. The Defendants neglected this option, and now act as if posting the Infringement in its entirety on their own website was the only means to accomplish their goal. This is simply not the case.

4. ***The Contention that the Infringement Actually Helps the LVRJ and Increases the Work's Value is Inapposite to this Analysis***

a. ***The Defendants' Unsubstantiated Theory Has Been Venerably Rejected***

Finally, with respect to the fourth and final fair use prong, the Defendants' argument strays even further from, the mark. The Defendants' somehow contend, without any substantiation or support, that "CIO's use of the Work actually promotes the Las Vegas Review-Journal." (Defs.' Opp'n 10:8-9) This claim, thinly disguised as an expert opinion, is completely unmeritorious and should not be considered by the Court. Courts in jurisdictions nationwide have repeatedly rejected the proposition that the use of a copyrighted work is fair because said use might somehow increase the demand for the plaintiff's work. *See, e.g., Campbell,* 510 U.S. at 591 n. 21 (even if a "film producer's appropriation of a composer's previously unknown song . . . turns the song into a commercial success[,] the boon to the song does not make the film's simple copying fair"); *DC Comics Inc. v. Reel Fantasy, Inc.,* 696 F.2d 24, 28 (2d Cir. 1985) ("Since one of the benefits of ownership of copyrighted material is the right to license its use for a fee, even a speculated increase in DC's comic book sales as a consequence of RFI's infringement would not call the fair use defense into play as a matter of law. The owner of the copyright is in the best position to balance the prospect of increased sales against revenue from a license"); *Ringgold v. Black Entertainment Television, Inc.,* 126 F.3d 70, 81 n. 16 (2d Cir. 1997) ("Even if the unauthorized use of plaintiff's work in the televised program might increase poster

sales, that would not preclude her entitlement to a licensing fee").  Furthermore, the Defendants' wishful contention in this regard also fails to account for the possibility that readers may be diverted from the Work's original source publication as a result of the Infringement's availability on the CIO website.  Ultimately, this wholly speculative theory has no bearing on the Court's analysis and does nothing to bolster the Defendants' assertion of fair use.

> **b.**  ***The Defendants' Argument on Market Effect Gives Rise to a Genuine Issue of Material Fact***

Clearly, the Defendants' contention that "CIO's use of the Article actually exposed a new segment of people to the [LVRJ website]" constitutes an issue of material fact, thereby warranting discovery to verify this unsupported conclusion. (Defs.' Opp'n 10:13-14)  Again, as discovery has not yet commenced in this matter, it would be inappropriate to dismiss this action on the basis of fair use when the Defendants' fair use argument is predicated largely upon factual speculation and conjecture.

> **B.**  ***The Defendants' Implied License Argument is Both Procedurally Improper and Entirely Unmeritorious***

> **1.**  ***The Implied License Argument is Non-Responsive to this Court's Order***

The Defendants' assertion of an implied license argument in the Opposition is entirely non-responsive to the Court's Order to Show Cause concerning fair use and, therefore, is procedurally inappropriate.  This Court's Order (Docket No. 12-0) clearly mandated that Righthaven "show cause why this case should not be dismissed under the 17 U.S.C. § 107 Fair Use exception."  The Order did not authorize the Defendants to oppose Righthaven's Response. *See id.*  The Order also did not invite the parties to raise additional arguments unrelated to fair use, such as the implied license argument now being advanced by the Defendants.  Accordingly, the Defendants' implied license argument is improper and should not be considered by the Court in the context of the Order to Show Cause.

2. *__No Implied License Exists__*

Notwithstanding the procedural impropriety of the Defendants' argument, no implied license has ever been present in this lawsuit. The Defendants erroneously suggest that an implied license existed here because, via the LVRJ website, "readers can share articles with third parties by selecting an icon that is simply labeled 'email this.' (Defs.' Opp'n 9:23-24) The Defendants also state that "[r]eaders are invited to save copies of the article onto their own personal computers." (Defs.' Opp'n 9:24-25) However, the Defendants are conveniently ignoring the fact that the LVRJ website only permits users to save a **hyperlink** leading to the articles published on the LVRJ website, or to e-mail a **hyperlink** leading to the LVRJ website. Importantly, both of these options ultimately require the user (or the user's e-mail recipient) to access the LVRJ articles directly through the LVRJ website. In other words, the option to save or e-mail a hyperlink to the LVRJ articles rightfully ensures that Internet users will only view said articles as they are displayed by the LVRJ website, rather than by viewing unauthorized copies of the articles displayed on an infringing website (such as the CIO website). This use of hyperlinks, prudently employed by the LVRJ website, is seemingly intended to both ensure copyright protection and invite user traffic to view LVRJ articles online. As such, the Defendants cannot reasonably argue that they properly inferred the LVRJ's consent to create a wholesale reproduction the Work. By no means are the LVRJ's use of hyperlinks intended to encourage users to commit copyright infringement without any possible repercussion, and the Defendants' contention to the contrary is entirely unreasonable.

Moreover, the fact that copyrightable material is often published, and thus, ***made available to the public***, is not a new concept. Apparently, the Defendants are unaware that the United States Copyright Office (the "USCO") requires copyright registrants to deposit a specimen of each work with the Copyright Office "for the use or disposition of the Library of Congress." 17 U.S.C. § 407(b). Once registered, each protected work deposited with the USCO enters the Library of Congress and is made accessible to the public. *See id.* However, the fact that a protected work is made publicly available does not mean that the work can be freely copied and distributed amongst the public without repercussion. In effect, the Defendants are

arguing that they reasonably assumed that the infringed works could be copied and publicly distributed simply because the infringed works were made freely available on the LVRJ website. This proposition is highly illogical and essentially ignores hundreds of years of established copyright law.

### 3.   *The Defendants' Implied License Argument Gives Rise to a Genuine Issue of Material Fact*

The Defendants should be precluded from achieving dismissal (or summary judgment) on an implied license theory in light of the pertinent factual questions arising therefrom.  For example, Righthaven's insistence that the LVRJ website merely allows users to share and save hyperlinks leading back to the LVRJ website – therefore requiring readers (or readers' e-mail recipients) to view each article in its original location – represents a significant ***factual*** distinction from the Defendants' wrongful depiction of the options available via the LVRJ website.  Again, Righthaven's position in this regard is strengthened by the fact that the parties have yet to begin the discovery process.  Should the Court choose to entertain the Defendants' theory as viable, discovery of this issue would clearly be appropriate.

Importantly, in the context of copyright law, whether an allegedly infringing defendant was granted an implied license to reproduce the plaintiff's protected work is generally a question of fact not resolvable by summary judgment.  *See, e.g., Netbula, LLC v. Chordiant Software, Inc.,* No. 08-00019, 2009 WL 2044693, slip op. at 6 (N.D. Cal. Jul. 9, 2009); *Pavlica v. Behr,* 397 F. Supp. 2d 519, 526 (S.D.N.Y. 2005); *Systems XIX, Inc. v. Parker,* 30 F. Supp. 2d 1225, 1230 (N.D. Cal. 1998).  As such, absent an opportunity for discovery, logic dictates that copyright actions also should not be subject to pretrial, *sua sponte* dismissal on this same basis. Ultimately, the Court should also consider whether the LVRJ ***intended*** to grant an implied license to the Defendants, thereby authorizing the Works' wholesale reproduction. *See Montwillo v. Tull,* 632 F. Supp. 2d 917, 924 (N.D. Cal. 2008).  Such a determination of intent should not reasonably be subject to outright dismissal at these incipient stages of litigation.

**C. _The Defendants' Interpretation of Worldwide Church is Misleading and Unfounded_**

The Defendants' efforts to distinguish this case from the facts in _Worldwide Church_, thereby undermining the significance of the Ninth Circuit's impactful decision, is entirely self-serving and are demonstrative of the far-reaching nature of the Defendants' overall position.  The Defendants' abbreviated discussion on this topic is limited to two purportedly distinguishing characteristics concerning the work at issue in _Worldwide Church_. (Defs.' Opp'n 11:20-26)  However, the "distinctions" relied upon by the Defendants are clearly unfounded and, ultimately, do nothing to negate _Worldwide Church_'s significant precedential value to the present fair use analysis.

The Defendants' first contention, that _Worldwide Church_ is inapplicable to the instant action because the infringed work in that case "consist[ed] of seven lengthy chapters," (Defs.' Opp'n 11:20-21) is, at best, of minimal relevance to the current dispute.  In that vein, it is not surprising that the Defendants fail to cite any case law to support their theory that the Infringement displayed on the CIO website is somehow less offensive merely due to the length of the infringed Work.  For multiple reasons, this position is unmeritorious.  First, if sheer textual volume was a consideration deemed vital to this analysis, written works of minimal length, ranging from poems to short memoirs, would invariably be placed at a severe disadvantage with respect to pursuing legal recourse for alleged infringements.  Additionally, it can easily be argued that the Work, as holistically infringed upon by the Defendants, is hardly a short literary work (particularly when compared to other newspaper articles).  The Work consists of no less than 33 written paragraphs, and as detailed herein, was the product of extensive investigative journalism performed by its author. (_See_ Compl. Ex. 1.)  A detailed literary work of this length cannot reasonably be excluded from a proper fair use inquiry on the basis of brevity.  Finally, there is absolutely nothing to indicate that the Defendants would not have made a wholesale copy of the Work had the Work been shorter in length.  To the contrary, the verbatim nature of the Infringement plainly suggests that the Defendants would have reproduced the Work, in its entirety, regardless of its length.

The Defendants' next claim, concerning the level of creativity of the work at issue in *Worldwide Church*, is equally baseless. (Defs.' Opp'n 11:22-24)  This argument is predicated entirely upon the Defendants' arbitrary, unilateral characterizations of creative expression. While the infringed work in *Worldwide Church* is undoubtedly creative and was rightfully afforded copyright protection, this by no means diminishes the protection deserved for literary works of a different nature, such as the Work at issue in this case.  As discussed herein, the Work is far more than a mere recitation of facts: drafting the Work entailed the careful determination of which facts were significant, along with the placement of those facts in an understandable and articulate manner.  The creation of such a nonfiction work clearly entails considerable originality. *Harper & Row,* 471 U.S. at 547.  While there is certainly an enormous amount of creativity involved with drafting seven chapter of religious-based text, this does not mean that every other literary work should, by comparison, be demeaned as undeserving of copyright protection.

### D. *This Court's Decision in Realty One is Favorable to Righthaven's Present Position*

#### 1. *The Defendants Have Ignored the Applicable Law Governing Fair Use*

By citing Judge Larry Hicks' decision in *Realty One*, the Defendants are inexplicably ignoring the applicable legal standard governing fair use.  Ironically, at the beginning of their Opposition, the Defendants cite the very law which they later choose to ignore: the fair use inquiry "is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for a ***case-by-case analysis***." *Campbell,* 510 U.S. at 577-78 (emphasis added). (Defs.' Opp'n 6:6-7)  Incredibly, the Defendants seem to have forgotten this principle – that all fair use challenges be examined on an individual basis – despite its obvious applicability to their own argument.  Nevertheless, and as further discussed in the following paragraph, this case-by-case requirement greatly diminishes the present impact of Judge Hicks' decision, particularly in light of the significant factual differences between this case and those at issue in *Realty One*.

15

2.   ***The Partial Infringement at Issue in Realty One – and Judge Hicks'
Reliance Thereon – Renders the Realty One Decision Favorable to
Righthaven's Present Position***

The facts at present are clearly distinguishable from those at issue in *Realty One*, and such distinctions are seemingly dispositive to the fair use analysis. The most important distinction arises from the amount of the copyrighted work taken by the infringing party. As repeatedly mentioned herein, the Defendants in this matter created a wholesale, verbatim copy of the Work and publicly displayed said copy on the CIO website. (*See* Compl. Ex. 1-2.) Contrarily, in *Realty One*, the infringement at issue was a reproduction of approximately 30% of the protected work. *Realty One,* 2:10-cv-1036-LRH-PAL, slip op. at 4. This act of non-holistic copying by the defendants in *Realty One* was an integral factor in Judge Hicks' ruling. Judge Hicks, in assessing the third fair use factor, ***was clearly impacted by the extent of the Realty One defendants' copying***: "Nelson reproduced only the first eight sentences of a thirty sentence news article . . . [t]he court finds that this use weighs in favor of a fair use of the copyrighted material." *Realty One,* 2:10-cv-1036-LRH-PAL, slip op. at 4. Similarly, Judge Hicks emphasized that, because the infringement was not a full copy, ***the infringing "use [did] not satisfy a reader's desire to <u>view and read the article in its entirety</u>*** . . ." *Id.* (emphasis added). Judge Hicks also noted that "Nelson ***directed readers of his blog to the <u>full text</u> of the Work***." *Id.* (emphasis added). These considerations simply do not apply to the present action, as the Defendants' wholesale reproduction and public display of the Work on the CIO website wholly obviated the need for any reader to re-access the Work on the LVRJ website. In other words, it appears highly likely that Judge Hicks would have reached a far different conclusion in *Realty One* had the infringement at issue been a holistic reproduction, rather than a 30% copy, of the protected work.

Furthermore, Judge Hicks supported his ruling in *Realty One* by citing the Ninth Circuit's decision in *Los Angeles News Service v. CBS Broadcasting, Inc.,* 305 F.3d 924, 941 (9th Cir. 2002), a case in which the Ninth Circuit held that copying only as much as necessary weighs in favor of fair use. In this case, the Defendants copied far more than necessary to

16

accomplish their stated purpose.  The Defendants could easily have copied a small portion of the Work and provided a hyperlink leading back to the Work as displayed on the LVRJ website. Instead, the Defendants chose to blatantly infringe on the Work's copyright by reproducing its entire content with authorization to do so.  This significant distinction from *Realty One* completely undermines the Defendants' reliance upon Judge Hicks' decision.

### 3.   ***Judge Hicks' Decision in Realty One was in Error***

Notwithstanding the factual distinctions between *Realty One* and the present case, Righthaven nevertheless maintains that Judge Hicks' decision was in error.  Though the reproduction at issue in *Realty One* was limited to a partial copy, said copy was completely devoid of transformative value and merely constituted a copied-and-pasted portion of the original literary work.[3]  Moreover, the reproduction displayed by the *Realty One* defendants was unquestionably exploited for commercial gain,[4] thus Righthaven should have been entitled to a presumption of market harm. *See Sony Corporation of America v. Universal City Studios, Inc.,* 464 U.S. 417, 451 (1984).  Judge Hicks did not address this presumption, instead finding – in an extremely brief analysis – that the defendants' "use of the copyrighted material [was] likely to have little to no effect on the market for the copyrighted news article." *Realty One,* 2:10-cv-1036-LRH-PAL, slip op. at 4.  Righthaven respectfully, yet vehemently, disagrees.  The utter lack of transformative value in the defendants' reproduction, along with the verbatim nature of the portion copied and deserved presumption of market harm, did not warrant a finding of fair use.

While Righthaven believes that Judge Hicks' *Realty One* decision is in error, Righthaven simultaneously understands that it is incumbent upon us to presently respect and give due deference to Judge Hicks' decision.  Moreover, Righthaven anticipates a procedural posture in the near future whereby Judge Hicks' fair use holding will be appealable.  Specifically, given that Judge Hicks' dismissal applied only to one of the *Realty One* defendants and, notably, did

---

[3] *See Realty One,* 2:10-cv-1036-LRH-PAL (Docket Nos. 1-0, 1-1, 1-2, 1-3).

[4] *See id.*

not dismiss all of the defendants from the lawsuit, Righthaven plans to move for default judgment against defendant Realty One Group, Inc.[5]  However, as Righthaven's infringement action against Realty One Group, Inc. arises from the same set of operative facts as Righthaven's (now defunct) claim against the dismissed defendant, Righthaven recognizes that Judge Hicks, given his own recently established precedent, may very well deny Righthaven's forthcoming default judgment motion and dismiss Realty One Group, Inc. from the lawsuit, *sua sponte*, on the basis of purported fair use.[6]

As Righthaven has reached a private settlement with the dismissed defendant in *Realty One*, Righthaven is not in position to appeal Judge Hicks' dismissal of said defendant to the Ninth Circuit, as this would constitute a breach of the governing settlement agreement. Contrarily, Realty One Group, Inc. is **not** subject to said settlement agreement, and as Righthaven anticipates that Realty One Group, Inc. will benefit from Judge Hicks' position on fair use by way of being dismissed, *sua sponte* (and protected from default judgment), Righthaven fully intends to appeal *Realty One* to the Ninth Circuit on the fair use issue. Summarily, in addition to being significantly factually distinguishable from the present action, Righthaven ultimately believes that the fair use finding in *Realty One* was rendered in error.

### E.   <u>*In the Event of a Sua Sponte Dismissal, Righthaven is Entitled to Leave to Amend or Limited Discovery*</u>

The Defendants' arguments that Righthaven's procedural concerns with a potential *sua sponte* dismissal are merely a "delay tactic" are asserted without any regard for relevant law. (Defs.' Opp'n 12-13)  First, there is no question that Righthaven would be entitled to leave to

---

[5] Clerk's Entry of Default has already been entered against defendant Realty One Group, Inc. *See* Default, *Realty One*, No. 2:10-cv-01036-LRH-PAL (Docket No. 16-0).

[6] In fact, given the Ninth Circuit's unambiguous position on this exact issue, it will be difficult for Judge Hicks to deviate from his prior fair use holding (granting Mr. Nelson's dismissal) when ruling upon Righthaven's forthcoming motion for default judgment against Realty Group. *See In re First T.D. & Investment, Inc.,* 253 F.3d 520, 532 (9th Cir. 2001) ("It follows that if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants . . . It would likewise be incongruous and unfair to allow the Trustee to prevail against Defaulting Defendants on a legal theory rejected by the bankruptcy court with regard to the Answering Defendants in the same action.").

amend, given the nature of the Defendants' Infringement and the legal standards governing copyright actions.  As discussed in Righthaven's original Response, a *sua sponte* dismissal is only "appropriate when it is clear that no relief could be granted under any set of fact that could be proven consistent with the allegations set forth in the complaint."  *See Burnett v. Twentieth Century Fox Film Corp.,* 491 F.Supp.2d 962, 966 (C.D. Cal. 2007).  Similarly, upon a 12(b)(6) dismissal, leave to amend should be granted unless doing so would be futile.  *In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970, 991 (9th Cir. 1999).  At present, it is hard to imagine how, in accordance with the allegations set forth in the Complaint, relief for infringement could ***clearly*** not be granted to Righthaven, or how it would be futile to grant leave to amend.  It is well-established that to prove copyright infringement, the plaintiff must demonstrate: "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991).  In the instant matter, the elements of Righthaven's copyright claim are expressly pled in the Complaint, wherein Righthaven alleges copyright ownership of the Work and also alleges the Defendants' Infringement. (Compl. ¶¶ 8, 10-11.)  Furthermore, Righthaven presents evidence in support of these allegations by exhibiting both the copyright registration granted by the USCO and the Defendants' verbatim Infringement. (Compl. Ex. 2-3.)  As such, any suggestion that this lawsuit is somehow futile, despite the sufficiency of Righthaven's pleadings and the 100%, wholesale nature of the Defendants' infringing conduct, is simply erroneous.

Additionally, in the event that this matter is dismissed *sua sponte* pursuant to Rule 56, such a dismissal would only be appropriate if Righthaven, as the losing party, "was on notice that she had to come forward with all of her evidence."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986).  In that vein, Righthaven must first be provided with a sufficient opportunity to appreciate the discovery topics at-issue and to conduct discovery on such topics.  *Portsmouth Square, Inc. v. Shareholders Protective Comm.,* 770 F.2d 866, 869 (9th Cir. 1985).  Righthaven has not yet been afforded any opportunity for discovery, thus a Rule 56 dismissal absent such an opportunity would run directly counter to Ninth Circuit authority.

III.    **CONCLUSION**

In light of the controlling law and fair use analysis initially set forth in Righthaven's

Response and further enumerated in the instant Reply, Righthaven respectfully requests that this

Court not dismiss this case under the 107 U.S.C. § 107 Fair Use exception.

Dated this twenty-third day of December, 2010.


RIGHTHAVEN LLC

By: /s/ Shawn A. Mangano

SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 683-4788
Fax: (702) 922-3851

J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
*Assistant General Counsel at Righthaven LLC*
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
jchu@righthaven.com
*Staff Attorney at Righthaven LLC*
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900

*Attorneys for Plaintiff Righthaven LLC*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee of Righthaven LLC and that on this twenty-third day of December, 2010, I caused the **REPLY IN SUPPORT OF PLAINTIFF'S REPONSE TO ORDER TO SHOW CAUSE** to be served by the Court's CM/ECF system.

By: /s/ J. Charles Coons

J. CHARLES COONS, ESQ.
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701