SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 683-4788
Fax: (702) 922-3851

J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
*Assistant General Counsel at Righthaven LLC*
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
jchu@righthaven.com
*Staff Attorney at Righthaven LLC*
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900

*Attorneys for Plaintiff Righthaven LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>CENTER FOR INTERCULTURAL ORGANIZING, a not-for-profit Oregon entity; and KAYSE JAMA, an individual,<br><br>Defendants. | Case No.: 2:10-cv-01322-JCM-LRL<br><br>**PLAINTIFF'S OPPOSITION TO PROFESSOR JASON SCHULTZ'S MOTION TO FILE *AMICUS CURIAE* BRIEF AND TO APPEAR AT HEARING ON ORDER TO SHOW CAUSE** |

Plaintiff Righthaven LLC ("Righthaven") hereby submits this opposition to the Motion of

Professor Jason Schultz ("Schultz") to File an *Amicus Curiae* Brief (Doc. # 17) and to the

1

Motion of Professor Jason Schultz to Appear an *Amicus Curiae* at Hearing on Order to Show Cause Re Fair Use (Doc. # 20).  Righthaven's opposition is supported by the below Memorandum of Points and Authorities, the Declaration of Shawn A. Mangano, Esq., Righthaven's response to the Order to Show Cause (the "OSC"), its reply to Defendants Center for Intercultural Organizing ("CIO") and Kayse Jama ("Jama" and collectively referred to herein with CIO as the "Defendants") opposition to Righthaven's OSC response, the pleadings and papers on file in this action, any oral argument allowed by this Court, and on any other matter of which this Court takes notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

As argued below, Schultz makes numerous, unsupported factual assertions in his *amicus curiae* brief (the "Amicus Brief").  While Righthaven maintains that these factual assertions demonstrate Schultz's bias and supports denying him *amicus curiae* status, it is beyond question that Schultz's statements raise numerous issues of material fact, any one of which would make *sua sponte* dismissal of the infringement claims on fair use grounds inappropriate under Federal Rule of Civil Procedure 56 ("Rule 56") or Federal Rule of Civil Procedure 12(b)(6)("Rule 12(b)(6)").  Even Schultz, despite his strenuous advocacy for a finding of fair use, refuses to opine as to whether *sua sponte* dismissal is appropriate at this juncture.  (Doc. # 17-1 at 2.)

Schutlz's citation to several inapplicable Internet thumbnail and cache cases only further illustrates the impropriety of his participation in this case.  Simply put, Schultz seeks to instruct the Court as the applicable fair use standards, which is a purely legal determination reserved for the Court and which has otherwise been extensively briefed by the parties, with inapplicable case law.  Granting Schultz *amicus curiae* status would place the Court at risk of adopting these erroneous legal standards and subject any decision to reversal on appeal.

Translated literally, "*amicus curiae*" means "friend of the court."[1]  Schultz asks this Court, under the cloak of being a "friend of the court", to allow him to file a brief in response to

---

[1]  *See* http://legal-dictionary.thefreedictionary.com/Amicus+Curiae

the OSC and to appear and, apparently educate, the Court on the law of fair use at the OSC hearing.  Schultz has not sought this unique status on behalf of a certain interest group or on behalf of the Samuelson Law Clinic or the University of California, Berkeley Boalt Hall School of Law with which he is affiliated.  (Doc. # 17 at 2 n.1.)  In fact, Schultz expressly disclaims that he is seeking *amicus curiae* status on behalf of the Samuelson Law Clinic or Boalt Hall – rather he is seeking such status apparently on the basis that he is a citizen concerned about the application of the Copyright Act who happens to teach law and hold a law degree. (*Id.* at 2:11-14.)

It is not until one considers Schultz's prior professional affiliation with The Electronic Frontier Foundation ("EFF"), which was not disclosed by Schultz in his filings, that his true motive for seeking *amicus curiae* status is revealed.  In short, Schultz has sought to participate in this case as a means to advance EFF's defense of other Righthaven actions pending in this district.  (*See* Doc. # 17 at 2 n.1.)

EFF's use of Schultz as a shill for its agenda is readily apparent through the jaundiced and incorrect legal propositions contained in his Amicus Brief"), his assertion of factual propositions in the Amicus Brief upon which he has absolutely no personal knowledge, his prior employment with EFF and his appearance through the same local counsel as employed in EFF defended Righthaven actions before this Court.  Quite frankly, Schultz is far from a "friend of the court."  Rather, he is the proverbial wolf in sheep's clothing who seeks to mislead this Court's fair use analysis for the benefit of EFF's defense of other cases now pending and future cases yet to be filed.  Accordingly, as argued below, the Court should deny Schultz's motion and preclude his participation in this case as "*amicus curiae*."

## II.   STATEMENT OF FACTS

Righthaven filed this copyright infringement action against the Defendants on August 5, 2010.  (Compl. ¶¶ 1, 27-39, Doc. #1 ¶¶ 1, 27-39.)  Righthaven's infringement claims involve the 100% copying and unauthorized use by Defendants of a copyright protected original work of authorship by Lynnette Curtis entitled "Misdemeanor violations leading to deportations" (the

"Work"). (Compl. Ex. 1, Doc. #1, 1-1 at 2-4.) Specifically, the Work reflects over 30 paragraphs of research and writing by Ms. Curtis. (Compl. Ex. 1, Doc. #1, 1-1 at 2-4.)  Righthaven contends that on or about July 8, 2010, the Defendants copied and posted a 100% copy of the Work on their publicly available Internet domain located at <interculturalorganizing.org> (the "Website"). (Compl. ¶¶ 5-6, 11, Ex. 2; Doc. #1 ¶¶ 5-6, 11, #1-1 at 6-7.)

On November 15, 2010, this Court issued the OSC, which requested Righthaven address why its copyright infringement claims should not be dismissed under the Fair Use exception. (Doc. #12.) On November 29, 2010, Righthaven filed its response to the OSC, which argued extensively that Defendants' 100% unauthorized replication of the Work failed to qualify, as a matter of law, for the defense of fair use based on several decisions from the by the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"), along with decisional law from the Supreme Court of the United States (the "Supreme Court"). (See, e.g., Doc. # 7-21.)  While not authorized by the Court's OSC, Defendants filed a fifteen page opposition addressing the issues raised in Righthaven's response. (Doc. # 18.)  Righthaven recently filed its response to Defendants' opposition.

Over a month after the OSC and only after Righthaven had responded to the OSC and Defendants had filed their opposition, Schultz moved for leave to file the Amicus Brief.  (Doc. # 17.)  Schultz thereafter filed a motion to appear at the hearing as *amicus curiae* counsel (Doc. # 20.)  While the Court granted Schultz permission to file the Amicus Brief, it did so without providing Righthaven a sufficient opportunity to file this opposition.  (*See id.* (setting response deadline for 12/31/10); *see also* Doc. # 19.)  To the extent this aspect of Righthaven's filing is deemed inappropriate in view of the Court's action, Righthaven requests the Court reconsider its decision to grant permission to file the Amicus Brief and to strike same from the record. Righthaven's request to preclude Schultz's participation at the OSC is still ripe for consideration as an order granting his request has not been issued.  Righthaven asks this Court to deny Schultz's request to participate at the OSC hearing, in addition to striking the Amicus Brief, as set forth herein.

III.   **ARGUMENT**

A.   *This Court has Held That Leave to Participate in Amici Capacity Should Not be*
*Granted Where the Parties Are Adequately Represented and Where the Applicant's*
*Only Concern is The Interpretation of Law.*

Schultz cited several district court decisions, including one decision from this Court, in which *amicus curiae* applications have been granted. (Doc. # 17 at 2.) Schultz, however, neglected to bring to the Court's attention the decision by now Chief Judge Roger in *Long v. Coast Resorts, Inc.,* 49 F.Supp.2d 1177 (D. Nev. 1999), which denied the United States government's request to participate in proceedings as *amicus curiae* counsel. *Id.* at 1178.   Judge Hunt's decision in *Long* provides clear guidance for this Court's consideration of Schultz's request to appear as *amicus curiae* counsel in this action.   When this guidance is followed, the result should be the same – leave to participate as *amicus curiae* counsel should be denied.

As acknowledged by Judge Hunt, "[t]his Court recognizes that it has the power to permit the appearance as *amicus curiae*.  However, it also has the power to reject it." *Id.*  This power is not abridged by the consent of the parties, or their lack of objection, "particularly where the applicant's only concern is the manner in which this Court will interpret the law." *Id.* (citing *American College of Obstetricians and Gynecologists, Pennsylvania Section v. Thornburgh,* 699 F.2d 644 (3d Cir. 1983).  Judge Hunt's analysis continued:

> Chief Judge Posner, of the Seventh Circuit, writes that, "The vast
> majority of *amicus curiae* briefs are filed by allies of litigants and
> duplicate the arguments made in the litigants' briefs, in effect
> merely extending the length of the litigant's briefs.  Such *amicus*
> briefs should not be allowed.  They are an abuse.  The term
> '*amicus curiae*' means friend of the court, not friend of a party."
> *Ryan v. Commodity Futures Trading Commission,* 125 F.3d 1062,
> 1063 (7th Cir. 1997). "An *amicus* brief should normally be allowed
> when a party is not represented competently or is not represented
> at all . . . ." *Id.*

*Long,* 49 F.Supp.2d at 1178.

Application of Judge Hunt's decision in *Long* to this case supports denying Schultz request to proceed as *amicus curiae* counsel in this action.  As argued below, the Defendants are

more than adequately represented in this case.  The parties have extensively briefed the issues

raised by the Court's OSC.  Permitting Schultz to appear as *amicus curiae* counsel adds nothing

of substance to this action.  In fact, granting Schultz, who is a private citizen and who is not

acting on behalf of any particular interest group, merely provides EFF with the opportunity to

unfairly and prejudicially jaundice this Court's analysis in the hopes of securing a decision that

can be used for the benefit of its clients in defending existing, and potentially future, Righthaven

copyright infringement actions. The Court should not be lulled into sanctioning EFF's ruse by

granting Schultz permission to appear as *amicus curiae* counsel in this action.

**B.  Schultz's Participation in This Action is Unnecessary And is Sought to Advance EFF's Ulterior Motives of Aiding Their Defense of Other Pending Actions in This Judicial District.**

There is simply no need for Schultz to participate in this action as *amicus curiae* counsel.
The parties are effectively represented by counsel and they have extensively briefed the issues
before the Court.  Schultz, on the other hand, is simply a private citizen who happens to have a
law degree and apparently has an interest in seeing that the Copyright Act is properly interpreted
and applied.  While he is a clinical law professor, he is not appearing on behalf of the legal clinic
or the law school with which he is affiliated.  The underlying motive behind Schultz's desire to
participate in these proceedings becomes clear once one considers his professional background.
Simply stated, Schultz is acting as a shill for EFF in an attempt to advance their litigation
interests in other pending and yet to be filed actions in this district.

Schultz's professional biography, which he did not submit to the Court, clearly reveals
his extensive prior affiliation with EFF.  Schultz's Boalt Hall biography proudly proclaims:
"Before joining Boalt Hall as a faculty member in the Samuelson Clinic, he was a Senior Staff
Attorney at the Electronic Frontier Foundation (EFF), one of the leading digital rights groups in
the world." (Mangano Decl. Ex. 1.)  Schultz's biography later boasts that he was "responsible
for numerous amicus briefs filed on behalf of EFF and its clients at the Supreme Court and
various Federal Courts of Appeal." (*Id.*)  Schultz is further credited with having "founded EFF's

1   Patent Busting Project, an effort to protect innovation and the public domain by filing

2   reexamination requests at the U.S. Patent Office on overly-broad software and Internet patents."

3   (Mangano Decl. Ex. 1.) Thus, Schultz's ties to EFF are beyond question.

4          EFF's motives for interjecting the foundation, through Schultz, into this action are

5   equally evident. EFF is currently defending two Righthaven copyright infringement actions in

6   this district: (1) *Righthaven LLC v. Democratic Underground, LLC, et al.,* case no.: 2:10-cv-

7   01356-RLH-RJJ; and (2) *Righthaven v. Thomas A. DiBiase,* case no.: 2:10-cv-01343-RLH-PAL.

8   (*Id.* ¶ 4.) Chad Bowers, Esq. serves as local counsel on behalf of EFF in these two actions. (*Id.*)

9   Mr. Bowers is acting as counsel for Schultz in this matter. (*Id.*) EFF has aggressively litigated

10  both pending actions by enlisting the services of several high profile Northern California-based

11  law firms to assist its efforts. (*Id.*) EFF's litigation tactics have included opposing Righthaven's

12  efforts to voluntarily dismiss claims with prejudice, while concurrently driving up litigation costs

13  through extensive motion practice and discovery efforts despite the pending dismissal motion.

14  (*Id.*) EFF would apparently like nothing more than to obtain a fair use ruling from this Court

15  that it could use to advance its defense of these other pending actions. As discussed below,

16  EFF's desire in this regard is readily apparent through the flawed legal arguments and

17  unsubstantiated factual assertions advanced by Schultz in this action. EFF should not be

18  permitted to use Schultz as a proverbial marionette for its litigation efforts under the guise of

19  seeking his participation in this case as *amicus curiae* counsel.

20         EFF's puppetry efforts aside, Schultz's participation in this action adds little value to the

21  Court's OSC undertaking. First, as discussed below, Schultz's legal analysis and factual

22  assertions illustrate that his participation in this case come at the risk of jaundicing the Court's

23  proper consideration of the issues before it. Moreover, Schultz's factual assertions

24  unquestionably raise material issues of fact that preclude *sua sponte* dismissal under either Rule

25  12(b)(6) or Rule 56 at this juncture. Secondly, the parties are competently represented by

26  counsel in this action. Righthaven and Defendants have extensively briefed the fair use issue in

27  response to the OSC, which has encompassed approximately 60 pages of argument and analysis.

28

1   As such, this is not a case where *amicus curiae* participation is warranted because the parties

2   lack competent representation.  *See Long,* 49 F.Supp.2d at 1178.

3       Simply put, given the circumstances before the Court, Schultz's participation would

4   abuse of the intended purpose underlying the recognition of *amicus curiae* status.  *Id.*

5   Accordingly, Schultz should be precluded from participating in the OSC proceedings and the

6   Amicus Brief should be stricken by the Court.

7

8   **C.  *Schultz's Factual Assertions Demonstrate His Bias And Additionally Raise Numerous***

9       ***Issues of Material Fact Each of Which Renders Sua Sponte Dismissal Under Either***

10      ***Rule 12(b)(6) or Rule 56 Improper.***

11      In addition to his professional affiliation with EFF, the unsupported factual assertions

12  contained in Schultz's Amicus Brief demonstrate his bias against Righthaven and his support

13  toward EFF's cause.  In short, Schultz's Amicus Brief reads like a submission by EFF.  Schultz's

14  Amicus Brief makes more bald, unsupported factual claims than Defendants, who at least would

15  have some arguable basis as to CIO's website traffic, membership composition and alleged intent

16  behind their unauthorized replication and use of the Work.  Thus, Schultz's submission is

17  nothing more than an extension of Defendants' filings, which is clearly an improper use of an

18  *amicus* filing.  *See Long,* 49 F.Supp.2d at 1178.  These circumstances further support denying

19  him *amicus curiae* status.

20      The veracity of Schutlz's factual assertions aside, it is crystal clear that each of these

21  statements raise a genuine issue of material fact, thereby making dismissal under Rule 12(b)(6)

22  or Rule 56 improper.  Under Rule 12(b)(6), dismissal is only "appropriate when it is clear that no

23  relief could be granted under any set of facts that could be proven consistent with the allegations

24  set forth in the complaint."  *See Burnett v. Twentieth Century Fox Film Corp.,* 491 F.Supp.2d

25  962, 966 (C.D. Cal. 2007).  Schutlz's factual assertions clearly fall outside the scope of inquiry

26  required for dismissal under Rule 12(b)(6).  Moreover, Rule 12(b)(6) dismissal analysis is

27  limited to the allegations of the complaint.  *Id.*  Fair use, however, is an affirmative defense upon

28  which the defendant bears the burden of proof with respect to all issues in dispute as to whether a

particular use of copyrighted material qualifies for the defense. *See Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1158 (9th Cir. 2007); *accord Lindal Cedar Homes, Inc. v. Ireland,* Civ.03-6102-TC, 2004 WL 2066742, at \*5 (D. Or. Sept. 14, 2004). As an affirmative defense, dismissal on fair use grounds is inappropriate under Rule 12(b)(6) since it would require application of an allegation contained in an answer to Righthaven's Complaint. Furthermore, Defendants have yet to allege the affirmative defense of fair use via an answer to Righthaven's Complaint in this case. Thus, significant procedural hurdles exist which make dismissal pursuant to Rule 12(b)(6) on fair use grounds inappropriate.

Similarly, Schultz's factual assertions prohibit dismissal of Righthaven's claims under Rule 56. Dismissal pursuant to Rule 56 requires the absence of any genuine issue of material fact, thus entitling a party to entry of judgment as a matter of law. FED. R. CIV. P. 56(c). Dismissal pursuant to Rule 56 is improper where a party has been provided with an insufficient opportunity to appreciate the discovery topics at-issue and to conduct discovery on those topics. *Portsmouth Square, Inc. v. Shareholders Protective Comm.,* 770 F.2d 866, 869 (9th Cir. 1985). Here, Schultz's factual contentions raise a host of material issues that require, at a minimum, discovery in the form of a subpoena and a related deposition. At this stage, however, Righthaven has not had the opportunity to conduct any discovery in this case. While Righthaven anticipates doing so in short order, it certainly has had an insufficient opportunity to do so with regard to Schutlz's factual assertions because they only came to light upon his appearance in this case. Accordingly, dismissal pursuant to Rule 56 is clearly inappropriate at this juncture.

Before turning to the specific factual assertions raised in the Amicus Brief, it must be kept in mind that Schultz is not a party to this action. Rather, he is simply a person with a law degree who is apparently interested in the purported proper application and interpretation of the Copyright Act. He his neither seeking to appear on behalf of the legal clinic nor the law school with which he is affiliated. That said, Schultz advances a plethora of factual assertions in support of a fair use finding despite not being involved with the parties to this case. The absurdity of the factual allegations asserted by Schultz, who unquestionably lacks any personal

1  knowledge upon which to base them, clearly demonstrates his bias – bias against Righthaven and

2  in support of EFF's litigation agenda.

3        Schultz's Amicus Brief is replete with factual allegations for which a disinterested party

4  should have no basis asserting.  For instance, Schultz's Amicus Brief states "CIO educated its

5  members about immigration and refugee rights without harming the market for, or value of, the

6  original work." (Doc. # 17-1 at 3.)  Schultz has set forth absolutely no basis upon which he

7  makes this assertion – particularly in the capacity of a disinterested "friend of the court."

8  Likewise, Schultz maintains in his Amicus Brief that "Readers of CIO's 'Immigrant and

9  Refugees Issues in the News" blog are most likely Oregon residents interest in the non-profit's

10  mission. (*Id.* at 5.)  While Schultz cites CIO's Website as support for this assertion, he has

11  clearly engaged in speculation in order to reach a conclusion that is favorable to the opinion he

12  has been asked to render – an opinion that has been requested by EFF according to Righthaven's

13  view of the record.  This conclusion is further supported by Schultz's unquestionably speculative

14  assertions with regard to viewers of the misappropriated version of the Work.  According to

15  Schultz, "[i]t is highly improbable that anyone who would have otherwise purchased a paper

16  copy of the LVRJ or visited its website chose not to because of CIO's blog post." (*Id.*)  Absent a

17  crystal ball, Schultz has absolutely no foundational basis upon which to make this claim.

18        Similarly, Schultz's assertions concerning the impact of CIO's unauthorized use of the

19  Work is clearly speculative and supports a finding that he has made such a statement for the

20  purpose of advancing EFF's goal of this Court reaching a finding of fair use.  Schultz proclaims

21  in his Amicus Brief that "CIO's use of the Curtis Article expanded public knowledge about

22  immigration enforcement without cannibalizing the market for the original work." (*Id.*)  Schultz

23  has set forth absolutely no foundational basis to make this critical factual assertion.  In fact,

24  Schultz's assertion would, in order to be proven or disproven, require substantial discovery

25  efforts which neither party has been provided in this case.  Similarly, Schultz asks this Court to

26  accept his contention that "CIO did not profit in any way because the Curtis Article appeared on

27  its blog." (Doc. # 17-1 at 6.)  Again, absent some undisclosed clairvoyant ability or some other

28  basis for knowing the internal finances of CIO, Schultz is clearly asking this Court to buy goods

he is attempting to sell on behalf of EFF under the guise of being a professor and a "friend of the court." Schultz's factual shilling for EFF is further demonstrated by his apparent willingness to ask the Court to make a determination without any supporting evidence and further to foreclose Righthaven's ability to uncover such evidence through discovery, which it has not undertaken to date:

> To demonstrate that CIO profited by using the Curtis Article, Righthaven would need to show that some user gave money to the CIO because the article was available on the CIO website. Righthaven would never be able to make such a showing for a single person, let alone a substantial group. It cannot demonstrate that CIO "profited" by using the Curtis Article under any rational understanding of that term.

(*Id.*) Schultz's statement is nothing short of ludicrous. Not only does it run contrary to Ninth Circuit law, but he has absolutely no basis upon which to make such a statement and upon which to advise this Court that Righthaven cannot ferret out evidence during the discovery process to meet his artificially constructed threshold of proof. Quite honestly, the advocacy with which Schultz makes such a statement, despite his apparent neutrality, clearly evidences an agenda designed toward fostering a finding of fair use, which is unquestionably a result favored by EFF.

The above-cited examples of Schultz's advocacy in favor of a fair use finding are by no means aberrations. His Amicus Brief, which is supposedly submitted as a friend of the Court, is unquestionably biased toward a fair use finding and predicated upon facts which he has no basis to reach the conclusion advanced by him. The following are additional examples of Schultz's unfounded contentions contained in the Amicus Brief:

1.  "Moreover the article has been removed from its usual habitat. It is not owned by a newspaper, but has been assigned to a company that does not publish news stories, but uses them exclusively to file infringement suits. That practice has a chilling effect on potential fair uses of Righthaven-owned articles, diminishes public access to the facts contained in them, and does nothing to advance the Copyright Act's purpose of promoting artistic creation." (Doc. # 17-1 at 7.)

2.      While the entire work was used here, that was reasonable to fulfill CIO's mission:
to educate stakeholders about a wide range of immigrant-rights issues and to
archive that information in one place. (Doc. # 17-1 at 7.)

3.      It would have been impractical to elevate one fact contained in the Curtis Article
over another when reporting on the article's findings given its short length. (*Id.*)

4.      And the market for the Curtis Article is not harmed by CIO's use. In fact, there is
no market for the work at all because it is owned by Righthaven, a company that
does not publish news stories, but files copyright infringement lawsuits based on
assigned copyrights as its exclusive business model. (*Id.* at 8.)

5.      And even before the LVRJ assigned the copyright to Righthaven, CIO did not
harm the market for the work. The LVRJ elected to give the Curtis Article away
for free on the Internet and continues to do so to this day. Given this, it is difficult
to fathom a scenario in which the LVRJ could have been harmed by CIO's use.
At most, the LVRJ might have been deprived of a few pennies, but the law does
not concern itself with such trifles. (*Id.*)

6.      There is a dearth of evidence or even allegations showing any actual harm to
Righthaven. The best that it can muster is to claim a "presumption" of harm
based on CIO's alleged commercial use of the Curtis Article. But CIO's use was
not commercial. (Doc. # 17-1 at 9.)

If the above passages from Schultz's Amicus Brief are examples of the type of statements
he wishes to make at the OSC hearing - statements that he has absolutely no basis to make and
which clearly demonstrate his prejudice against Righthaven – it would be a grave mistake for the
Court to permit him to appear or otherwise participate as *amicus curiae* counsel in this action.
Simply put, Schultz is not an expert witness. While he refers to himself as a professor, he has
distanced himself from the legal clinic and the law school with which he is affiliated in seeking
*amicus curiae* status. (Doc. # 17 at 2 n.1.) He is a private "concerned citizen" with a law
degree – nothing more – who clearly is seeking to advance the litigation agenda of his former

employer, EFF.   Moreover, the numerous factual assertions made by Schultz raise a variety of material issues of fact, each of which make dismissal under Rule 12(b)(6) or Rule 56 inappropriate.   Accordingly, Schultz should not be granted *amicus curiae* status, he should not be permitted to participate in the OSC proceedings, and his Amicus Brief should be stricken from the record.

### D.   Schultz's Legal Analysis is Completely Flawed And Further Demonstrates His Bias Against Righthaven And His Clear Support For EFF's Litigation Agenda.

One would think that if "Professor" Schultz could assist the Court's fair use analysis in any regard, it would be in the area of his purported expertise – copyright law.   Unfortunately, Schultz's overwhelming desire to further EFF's litigation agenda has completely crippled his legal analysis.   Moreover, Schultz's flawed legal analysis, if adopted by the Court, is nothing short of recipe for reversal by the Ninth Circuit.   The Court should avoid the risk of such a result by denying Schultz *amicus curiae* status.

#### 1.   Schultz Incorrectly Characterizes Righthaven's Position Concerning the Court's Fair Use Analysis in View of Defendants 100% Wholesale, Unauthorized Replication of the Work.

Schultz proclaims that "Righthaven advocates for a rule stating that the use of an entire copyrighted work cannot constitute fair use." (Doc. # 17-1 at 3.)   Not surprisingly considering he acting as a pawn in EFF's chess game, Schultz mischaracterizes Righthaven's position and its well-founded reliance on Ninth Circuit and Supreme Court law.   To be clear, Righthaven does not assert that use of an entire copyrighted work is ineligible for a finding of fair use.   Rather, it is Righthaven's position that in cases involving the verbatim copying of a work, the defending party faces an uphill battle establishing a fair use defense under the four factor analysis set forth in 17 U.S.C. section 107.   Moreover, it is Righthaven's position that Defendants' unauthorized 100% replication of the Work cannot constitute fair use as a matter of law when the Court correctly undertakes the four factor analysis in this case.

Case law, which has been cited by Righthaven, clearly establishes that in cases involving the verbatim copying of an entire work, the defending party faces an almost insurmountable task of establishing fair use. *See Worldwide Church of God v. Philadelphia Church of God, Inc., 227 F.3d 1110, 1120 (9th Cir. 2000)("Worldwide Church")*(finding, as a matter of law, the 100% copying of a religious text precluded a defense of fair use); *Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1155 (9th Cir. 1986)*("[W]holesale copying does not preclude a finding of fair use per se," but copying an entire work "militates against a finding of fair use."); *Walt Disney Prods. v. Air Pirates, 581 F.2d 751, 757 (9th Cir. 1978)* (acknowledging that "near-verbatim copying" generally precludes a finding of fair use). Moreover, case law further mandates that verbatim or near verbatim copying weighs against a finding of fair use under several of the four factors enumerated under 17 U.S.C section 107. *See, e.g., See Campbell v. Acuff-Rose Music, Inc., 510 U.S. at 587-88* (whether "a substantial portion of the infringing work was copied verbatim from the copyrighted work is a relevant question . . . for it may reveal a dearth of transformative character or purpose under the first factor . . ."); *Los Angeles Time v. Free Republic, No. 98-7840, 1999 WL 33644483, at *10 (C.D. Cal. Nov. 8, 1999)* ("There is nothing transformative about copying the entirety or portions of a work verbatim."); *see also Sony Computer Entm't, Inc. v. Connectix Corp., 203 F.3d 596, 607 (9th Cir. 2000)*(non-transformative work which merely supplants the original weighs against a finding of fair use under the fourth factor); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors, 786 F.2d 1400, 1409 (9th Cir. 1986)*(wholesale copying weighs against a finding of fair use under the second factor); *Marcus v. Rowley, 695 F.2d 1171, 1177 (9th Cir. 1983)* ("Even if it were true that plaintiff's book contained only facts, this argument fails because defendant engaged in virtually verbatim copying."). As emphasized by the Ninth Circuit in *Worldwide Church, supra,* which rejected, as a matter of law, a non-profit organization's fair use defense for the 100% unauthorized replication and use of an author's copyrighted work:

> We have found no published case holding that fair use protected the verbatim copying, without criticism, of a written work in its entirety.

1 | *Worldwide Church,* 27 F.3d 1110, 1120.

2 |       While Schultz seeks to characterize Righthaven as advocating a standard not supported

3 | by case law, this is simply not the case.  Schultz's misguided tactic is nothing more than

4 | additional evidence as to his bias against Righthaven and his unfettered desire to further EFF's

5 | litigation agenda.  Schultz's mischaracterizations aside, the cases cited by Righthaven

6 | unquestionably supports the proposition that Defendants face an uphill battle establishing a fair

7 | use defense in view of the unauthorized 100% copying of the Work.  As further explained in

8 | Righthaven's submissions in response to the OSC, Defendants' unauthorized 100% replication of

9 | the Work cannot constitute fair use as a matter of law when the Court correctly undertakes the

10 | four factor analysis in this case.

11 |

12 |       **2.**    ***Schultz Incorrectly Asserts That Righthaven's Position Cannot***

13 |       ***be Reconciled With Ninth Circuit Case Law Finding Fair Use in***

14 |       ***View of Verbatim Copying.***

15 |       Schultz next proclaims that "Righthaven's proposed test also cannot be reconciled with a

16 | series of cases finding fair use where entire works have been used."  (Doc. # 17-1 at 4.)

17 | Schutlz's mischaracterization of "Righthaven's proposed test" aside, the case law cited by him

18 | are completely inapplicable to the case before the Court, where the unauthorized 100% copying

19 | of the Work was placed on Defendants' Website in the exact same format as the original and for

20 | dissemination to readers just like the source publication.

21 |       To begin with, Schultz's citations to *Perfect 10, Inc. v. Amazon.com, Inc., supra,*

22 | (*"Perfect 10"*) and *Kelly v. Arriba Soft Corp.,* 336 F.3d 811 (9th 2003)(*"Kelly"*) are completely

23 | inapplicable to the case at bar.  Both *Perfect 10* and *Kelly* are cases involving an Internet search

24 | engine's use of small pictures known as "thumbnails." *See Perfect 10,* 508 F.3d at 1168; *Kelly,*

25 | 336 F.3d at 818-22. ***Both cases determined that the defendant's smaller and lower quality***

26 | ***replications of the copyrighted works at-issue constituted fair use and were transformative***

27 | ***because they served the different purpose of providing access to information on the Internet***

28 | ***rather than the original artistic purpose for which the works were created.*** *See Perfect 10,* 508

1    F.3d at 1165; *Kelly,* 336 F.3d at 819.  Moreover, the Ninth Circuit panel in *Perfect 10* expressly

2    noted that the thumbnail replications used for Internet search purposes at-issue in that case was

3    completely different from the non-transformative duplication of a written work by a non-profit

4    organization in *Worldwide Church.  Perfect 10,* 508 F.3d at 1165.  Thus, the Ninth Circuit

5    reaffirmed its decision in *Worldwide Church* in the very authority, the *Perfect 10* decision, which

6    Schultz asks this Court to conclude supports a finding of fair use.

7           Here, the Court is presented with an exact, 100% unauthorized duplication of the Work.

8    The unauthorized copy of the Work appearing on Defendants' Website was not altered in any

9    meaningful way.  It was not reduced to the size of an Internet thumbnail like the works at-issue

10   in *Perfect 10* and *Kelly.*  There was also absolutely no transformative use by Defendants in this

11   case because the unauthorized copy of the Work was used for the exact same purpose as it

12   appeared in the source publication – to inform and educate the public about immigration and law

13   enforcement practices in the State of Nevada.  Moreover, the Ninth Circuit reaffirmed the exact

14   case, *Worldwide Church,* upon which Righthaven has relied upon to demonstrate that Defendants

15   are not entitled to a finding of fair use as a matter of law in this case.  *See Perfect 10,* 508 F.3d at

16   1165.  Schultz's attempt to argue otherwise through his reliance on the decisions in *Perfect 10*

17   and *Kelly* is nothing short of disingenuous.  In fact, his misplaced reliance on these cases only

18   serves to underscore the degree to which he will go to advance EFF's litigation agenda.

19          Schultz's reliance on *Field v. Google, Inc.,* 412 F.Supp.2d 1106 (D. Nev. 2006)("*Field*")

20   is no different.  Once again, Schultz has used an Internet search engine's use of a copyrighted

21   work to aid the public in search functions to justify the Defendants' wholesale copying of the

22   Work in its identical format on their Website.  This case is simply inapplicable to the facts before

23   the court in *Field.*  At-issue in *Field* was the use of cached, or Internet snippets of webpages as

24   they existed at a particular point in time when inventoried by Google, which would appear in

25   user specified search results.  *Field,* 412 F.Supp.2d at 1110-11.  The court found that Google's

26   cached replications of the website at-issue constituted fair use because it they served a "different

27   and socially important purposes" than those of the original works and, as such, Google's use was

28   deemed transformative.  *Id.* at 1119.

As with *Perfect 10* and *Kelly*, *Field* does not support a fair use finding in favor of Defendants as urged by Schultz.  While the alleged infringing use in *Field* was determined to be transformative because Google used cached versions of the works at-issue for the different purpose of assisting users in performing Internet searches, the Defendants in this case copied and used the Work at-issue for the exact same purpose as it appeared in the source publication – to educate and inform people about immigration practices in the State of Nevada.  In order for Defendants to benefit from the decision in *Field*, they would have had to provided search functionality on their website and used cached snippets of immigration-related articles which could have been searched by their Website members.  No such fact pattern exists.  Rather, this is a crystal clear case of a party copying, without authorization, 100% of a written work and using that copy to benefit their organizational goals.

In sum, it is simply stunning the degree to which Schultz has misapplied the law in order to try to color Righthaven as having constructed an erroneous legal standard.  Given Schultz's background, he certainly understands the import of his Amicus Brief and the Court's potential reliance on it.  Schultz's overzealous advocacy unquestionably establishes his role as a shill for EFF's cause.  The Court simply cannot rely upon his tainted rendition of the law contained in his Amicus Brief.  Accordingly, Schultz should not be granted *amicus curiae* status in this case.

### 2. Consistent With the Disingenuous Nature of Other Portions of His Amicus Brief, Schultz's Four Factor Fair Use Analysis Has Been Constructed For EFF's Benefit.

Schultz's four factor fair use analysis is yet another example of his overwhelming desire to have this Court find in favor of Defendants so that EFF can use the decision to benefit clients in other litigation pending in this district.

### a. Schultz's purpose and character of the use analysis is completely misguided.

Schultz's analysis of the first fair use prong defies logic and common sense.  In essence, he asserts that CIO's republication of the Work was somehow transformative because it was used

"to educate those concerned with immigrant and refugee rights about evolving issues" in the area of immigrant and refugee rights and "to create an archive of related information." (Doc. # 17-1 at 5.) Schultz then speculatively describes the Las Vegas Review Journal's publication of the Work as being done to "provide timely, generalized information to Las Vegas residents about events in their local community." (*Id.*) Schultz's attempted to walk a proverbial tightrope in order to find CIO's unauthorized use as being transformative only serves to prove Righthaven's contention that the use was anything but transformative.

Both CIO and the Las Vegas Review Journal published the Work for the exact same purpose – to inform and educate readers of their publications about immigration issues emanating from the State of Nevada. No other conclusion is possible. If CIO was truly dedicated merely to educating Oregon residents about immigration issues in their community, CIO would not have felt the need to replicate the Work in its entirety on their website without authorization. As the *Worldwide Church* panel reasoned, copying a literary work "in its entirety bespeaks no 'intellectual labor and judgment.' It merely 'supersedes the object' of the original work." *Worldwide Church,* 227 F.3d at 1117. As the *Worldwide Church* panel further explained, to satisfy the first fair use factor, "[t]here must be real, substantial condensation of the materials, and intellectual labor and judgment bestowed thereon; and *not merely the facile use of the scissors, or extracts of the essential parts, constituting the chief value of the original work.*" *Id.* (emphasis added). Here, the nature and use of the unauthorized version of the Work in this case was nothing more than an exact copy of the original version as it appeared in the Las Vegas Review Journal, which was stolen and used for CIO's benefit. While Schutlz tries to couch CIO's use of the Work as something unique from its use in the Las Vegas Review Journal, they both used the Work to educate and inform readers interested in the topic of immigration issues in the State of Nevada.

Schutlz's attempts to traverse the Ninth Circuit's clearly controlling decision in *Worldwide Church* by alleging that the defendants "made no attempt to claims that its use of the work was transformative or served some other purpose than the original work." (Doc. # 17-1 at 6.) Rather, as Schultz acknowledges, the defendants relied upon their non-profit status in

1  support of the first fair use factor, which "was unavailing." (*Id.*)  Granted, to the extent it was

2  argued by the defendants in *Worldwide Church*, the panel noted that there was verbatim copying

3  which was used for the exact same purpose as the original.  *Worldwide Church,* 227 F.3d at

4  1117.  These are exactly the facts before the Court in this case – verbatim copying by the

5  Defendants and dissemination on their Website for the same purpose as the Work was originally

6  published in the Las Vegas Review Journal.  Schultz's claims to the contrary do not change this

7  conclusion.

8      Schultz next speculatively asserts, "CIO's use was non-commercial."  (Doc. # 17-1 at 6.)

9  He supports this contention by boldly claiming, "CIO did not profit in any way because the

10  Curtis Article appeared on its blog." (*Id.*)  Absent some clairvoyant ability normally reserved for

11  fortune tellers and tarot card readers, Schultz has absolutely no basis to make these statements.

12  That observation aside, Schultz apparently fails to fully appreciate the Ninth Circuit's decision in

13  *Worldwide Church*, which held that a non-profit organization could still use a misappropriated

14  work for commercial gain or "profit" extends beyond generating income and is not dollar

15  dominated. *Worldwide Church,* 227 F.3d at 1117-18.  In fact, the Ninth Circuit noted that the

16  defendant in *Worldwide Church* profited from the free distribution to its current members and by

17  attracting new members as well by doing so. *Id.* at 1118.  Such actions additionally helped

18  defendant profit because it provided a vehicle from which additional donations may have been

19  received. *Id.*  In short, defendant "profited" from the free distribution of the work at-issue

20  because "it gained an 'advantage' or 'benefit' from its distribution and use of the [work] without

21  having to account to the copyright holder." *Id.*  This is precisely how CIO "profited" from its

22  unauthorized 100% replication of the Work in this case.  CIO displayed the Work for free to its

23  members and potential members on its Website.  In doing so, it benefited by exposing these

24  members and potential members to the opportunity to donate to its cause – either through a direct

25  donation or by joining its membership for a fee.  Whether or not these Website visitors donated

26  or joined as members is immaterial because CIO received a benefit by facilitating the

27  opportunity for them to do so.  Schultz, however, refuses to employ this rationale, which is

28  supported by the Ninth Circuit's decision in *Worldwide Church*, because it does not support the

19

1   finding he urges this Court to adopt and which would benefit EFF.  Righthaven trusts the Court

2   will see through this selective reasoning and conclude the first factor weighs against a finding of

3   fair use.

4          **b.        *Schultz's examination of the nature of the work factor is mostly*

5                      *conclusory and largely unsupported by case law.*

6          In contrast to his citation to numerous inapplicable decisions in discussing the first fair

7   use factor, Schultz's discussion of the second factor is most conclusory and is the vast majority

8   of his assertions are unsupported by case law.

9          For instance, Schultz begins his discussion by characterizing the work as not being

10  entitled to very much protection "because it is short and largely reports facts."  (Doc. # 17-1 at

11  6.)  While it is not clear what constitutes "short" in Schultz's world, he does acknowledge at the

12  beginning of his Amicus Brief that the Work consists of "approximately 1,000 words . . . ." (*Id.*

13  at 3.)  As noted earlier in this submission, the Work reflects over 30 paragraphs of research,

14  interviews and writing by Ms. Curtis.  (Compl. Ex. 1, Doc. #1, 1-1 at 2-4.)  Simply put, it is an

15  investigative piece that is qualitatively different from an article summarizing the results from a

16  Sunday afternoon of National Football League games or a report on air traffic delays caused by a

17  winter storm.  Thus, while it is true that purely factual or informational works are entitled to less

18  protection, Righthaven asserts that the Work at-issue falls outside of such a description.

19         While attempting to pigeonhole the Work into something that is short, largely factual and

20  not entitled to much protection, Schultz fails to acknowledge case law that holds that written

21  factual accounts and news reports do entail significant creative endeavors.  The "[c]reation of a

22  nonfiction work, even a compilation of pure fact, entails originality." *Harper & Row Publishers,*

23  *Inc. v. Nation Enter.,* 471 U.S. 539, 547 (1985).  Moreover, written news articles reflect the

24  reporter's creative endeavors in compiling a piece for dissemination. *Los Angeles Times v. Free*

25  *Republic,* 54 U.S.P.Q.2d 1453, 1467 (C.D. Cal. Apr. 4, 2000) ("*Free Republic II*").  As noted by

26  the court in *Free Republic II*, "a news reporter must determine which facts are significant and

27  recount them in an interesting and appealing manner." *Id.*  Righthaven cited these cases in its

28

OSC response. Schultz's failure to distinguish or otherwise address these cases, despite his clear knowledge of their citation in the OSC response, speaks volumes as to their validity.

Schultz has also failed to address another key point raised by Righthaven with regard to the second fair use factor in view of the Defendants' wholesale, unauthorized replication of the Work in this case. As argued by Righthaven in its OSC response, the Ninth Circuit has previously found that a copyright defendant's reliance on the second fair use factor may be diminished if the defendant made a verbatim copy of the protected work in its entirety. *Supermarket of Homes, Inc.,* 786 F.2d at 1409; *see also Marcus,* 695 F.2d at 1177 ("Even if it were true that plaintiff's book contained only facts, this argument fails because defendant engaged in virtually verbatim copying."). Thus, Righthaven has argued that even assuming the Court were to classify the Work as primarily fact-based, the verbatim nature of the Defendants' wholesale, infringing conduct further supports a finding against fair use. Schultz has left this point completely unaddressed or otherwise contested, thereby apparently acknowledging its validity through his notable silence.

While Schultz is silent on several key arguments advanced by Righthaven with regard to the second factor, he nevertheless feels compelled to echo EFF's anti-Righthaven mantra as somehow supporting a finding of fair use. For instance, Schultz goes out of his way to point out such facts as the Work having been "removed from its usual habitat," that the Work "has been assigned to a company that . . . uses them exclusively to file infringement lawsuits." (Doc. # 17-1 at 7.) Of course, Schultz fails to cite any legal authority that holds such circumstances are appropriate considerations under a fair use analysis – whether under the second factor or any other factor. Schultz also boldly echoes another EFF mantra by proclaiming, "When a copyrighted work is simply an instrumentality for litigation, it is properly granted the lowest possible amount of protection against a fair-use claim." (Doc. # 17-1 at 7.) Once again, Schultz fails to cite a single case in support of this anti-Righthaven assertion. One would think that if such authority did exist, a professor affiliated with one of the nation's most well respected law schools would have uncovered it and cited it to the Court. Schultz bald assertions are unquestionably directed, as is the entirety of his Amicus Brief, toward the result he, and EFF,

want this Court to adopt regardless of whether supporting authority for the stated propositions exist. Righthaven is confident the Court will look past Schultz's tactics and find the second prong weighs against a finding of fair use.

      **c.**   ***Schultz's treatment of the third factor further evidences his bias against Righthaven.***

  The third fair use factor considers the amount and substantiality of the Work used in its unauthorized version. 17 U.S.C. § 107(3). As argued in Righthaven's OSC response, this factor unquestionably weighs against a finding of fair use because Defendants misappropriated 100% of the Work and posted it on their Website. Thus, the Work, when compared to the infringing version of the Work, is identical in every aspect.

  Despite these facts, Schultz fails to concede that this factor weighs against a finding of fair use. Rather, he argues that Defendants theft of the Work "was reasonable to fulfill CIO's mission: to educate stakeholders about a wide range of immigrant-rights issues and to archive that information in one place." (Doc. # 17-1 at 7.) Schultz once again fails to provide the Court with any supporting authority for this proposition. That key omission aside, Schultz's statement first serves to support Righthaven's contention that CIO provided a "benefit" or "profited" by providing a free copy of the Work to its members and potential members, which is discussed above under the first fair use factor. Quite simply, Schultz apparently admits that CIO's unauthorized use of the Work enabled it to "educate stakeholders" on points of interest without seeking the authorization of or to otherwise compensate the owner of the Work. *See Worldwide Church,* 227 F.3d at 1117-18. Schultz cannot justify Defendants' conduct on such grounds for purposes of one factor and turn a blind eye toward the results of such conduct when discussing another factor. Such tactics clearly undermine Schultz's credibility before this Court and serve to further evidence his bias against Righthaven.

  Schultz's justification for Defendants' unauthorized 100% replication of the Work also ignores that other, more "reasonable," options existed to accomplish the same organizational mission. For instance, the Defendants could have easily copied just a small portion of the Work coupled with a hyperlink leading back to the Work as displayed on the Las Vegas Review

Journal's website.  Alternatively, assuming the Work was largely factual, as asserted by Schultz,

Defendants could have simply summarized the Work and directed website viewers to the original

version in the event they wanted additional or expanded coverage of the topic addressed.

Defendants took none of these alternative means of accomplishing their alleged organizational

goal.  Rather, they chose to blatantly infringe the Work by reproducing its entire content with

authorization to do so.  While Schultz may contend such actions are "reasonable" despite the

existence of alternative means that do not rise to the level of infringement, Righthaven is

confident the Court will consider the cited authorities and find otherwise.  That said, the fact

remains that Schultz's treatment of the third fair use factor, which unquestionably weighs against

a fair use finding, serves to further evidence his bias toward Righthaven and his unstated goal of

helping secure a fair use ruling that can be used by EFF in other pending Righthaven cases in this

district.

> ### d.   Schultz's discussion of the fourth fair use factor is replete
> ### regurgitated, unsupported factual assertions and flawed
> ### conclusions designed to support a finding of fair use.

The fourth fair use factor considers the effect on the value and the market for the Work in

view of the alleged infringing conduct.  17 U.S.C. § 107(3).  While Righthaven has extensively

discussed this factor in its OSC response, Schultz uses his discussion as an opportunity to

regurgitate unsupported factual assertions and flawed conclusions that have been designed to

support a finding of fair use, which could then be used to the benefit of EFF and its clients in

pending litigation in this district.

As a threshold matter, Schultz completely dismisses Righthaven's claim to a presumption

of market harm in view of CIO's alleged commercial use.  As discussed above, Schultz's

analysis of the first fair use factor is completely flawed and premised upon inapplicable

authority.  Schultz dismisses Righthaven's entitlement to a presumption of market harm by

summarily concluding that "CIO's use was not commercial." (Doc. # 17-1 at 9.)  Schultz

additionally attacks Righthaven's business model, which his knowledge apparently is derived

from website articles such as "Copyright Trolling for Dollars," as being inappropriate for such a

1    presumption because "the owner of the copyright is an assignee who is not using the work for

2    anything beyond filing lawsuits." (*Id.* at 8, 9.)  The inapplicability of the authority cited by

3    Schultz aside, which should be readily apparent to the Court, Schultz is unquestionably not privy

4    to Righthaven's business model, business plan, revenue streams or anything else beyond what

5    he, or someone at EFF, have read on the Internet or in publicly available court records.  That

6    observation aside, it is remarkable that someone who professes to be an individual concerned

7    with the proper application of the Copyright Act and who is charged with educating the legal

8    minds of tomorrow would seek to discard such a recognized legal presumption based on clear

9    speculation, Internet gossip and blog driven innuendo.  Again, Schultz's overzealous advocacy

10   evidences the means to which he will go, or to which he has agreed to be lead by EFF, in order to

11   advance a fair use finding in this case.

12          Schultz's uses his discussion of the fourth fair use factor to also argue that the market for

13   the Work is not harmed because the Las Vegas Review Journal continues to make copies of it

14   available for free to the public.  (*Id.* at 8.)  While this fact is true, Schultz provides the Court with

15   no substantive information as to how such copies are provided free of charge to the public.  As

16   discussed in other filings in this action by Righthaven, the Las Vegas Review Journal provides

17   free e-mail and other electronic copies to the public through the use of a hyperlink which directs

18   the viewer back to the LVRJ's website.  This practice enables the Las Vegas Review Journal to,

19   among other things, calculate website traffic in order to evaluating and establish Internet

20   advertising rates.  The Las Vegas Review Journal permitting such access via hyperlink does not

21   mean, as suggested by Schultz, the market for its literary content is does not exist.  In short,

22   Schultz's analysis of the fourth fair use factor is just like his analysis of the three other factors –

23   he has predetermined that a fair use finding is required in this case under any circumstance.

24   Accordingly, the fourth fair use factor only serves to further evidence his bias against

25   Righthaven in the hopes of securing a decision that can benefit EFF and its clients in pending

26   litigation.

27

28

24

1 **IV.    CONCLUSION**

2    Whether referred to as a shill, a pawn, a puppet or a marionette, the fact remains that the

3 facts before the Court demonstrate Schultz is seeking *amicus curiae* status as a means for

4 advancing an agenda.  Righthaven believes the evidence presented and the arguments advanced

5 establish that Schultz is seeking to advance the litigation agenda of EFF, his former employer,

6 for the purpose of attempting to secure a ruling from this Court that it can use in pending

7 litigation in this district.

8    Schultz's motivation aside, the factual assertions made by him and upon which he asks

9 the Court to rely render dismissal under either Rule 12(b)(6) or Rule 56 inappropriate at this

10 stage of the proceedings.  Simply put, the veracity of these statements aside, Schultz's assertions

11 raise issues outside the pleadings and create genuine issues of material fact.  At a minimum, the

12 Court cannot rely upon these unsworn factual assertions without providing Righthaven with an

13 opportunity to conduct discovery.  Righthaven has not been provided with a sufficient

14 opportunity to do so to date and in view of Schultz's recent appearance in this case.

15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1    Based on the foregoing, Righthaven urges the Court to preclude Schultz's participation at

2   the OSC hearing by denying his application to proceed as *amicus curiae* counsel and to also

3   strike his Amicus Brief from the record.  Righthaven additionally requests the Court enter such

4   relief as it deems just and appropriate in view of the record before it in this action.

5       Dated this 27th day of December 2010.

6                                SHAWN A. MANGANO, LTD.

7                                By: /s/ Shawn A. Mangano
                                 SHAWN A. MANGANO, ESQ.
8                                Nevada Bar No. 6730
                                 shawn@manganolaw.com
9                                9960 West Cheyenne Avenue, Suite 170
                                 Las Vegas, Nevada  89129-7701
10                               Tel: (702) 683-4788
                                 Fax: (702) 922-3851
11
                                 J. CHARLES COONS, ESQ.
12                               Nevada Bar No. 10553
                                 ccoons@righthaven.com
13                               *Assistant General Counsel at Righthaven LLC*
                                 JOSEPH C. CHU, ESQ.
14                               Nevada Bar No. 11082
                                 jchu@righthaven.com
15                               *Staff Attorney at Righthaven LLC*
                                 Righthaven LLC
16                               9960 West Cheyenne Avenue, Suite 210
                                 Las Vegas, Nevada 89129-7701
17                               (702) 527-5900

18                               *Attorneys for Plaintiff Righthaven LLC*

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that on this 27th day of December, 2010, I caused a copy of the foregoing document to be served by the Court's CM/ECF system.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 683-4788
Fax: (702) 922-3851

J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
*Assistant General Counsel at Righthaven LLC*
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
jchu@righthaven.com
*Staff Attorney at Righthaven LLC*
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900

*Attorneys for Plaintiff Righthaven LLC*