CHAD A. BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorney for *Amicus Curiae*
PROFESSOR JASON SCHULTZ

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>　　　　　　Plaintiff,<br>　　　v.<br>CENTER FOR INTERCULTURAL ORGANIZING, a not-for-profit Oregon entity, and KAYSE JAMA, an individual,<br><br>　　　　　　Defendants. | CASE NO.:  2:10-cv-01322-JCM-LRL<br><br>**BRIEF OF *AMICUS CURIAE* PROFESSOR JASON SCHULTZ IN RESPONSE TO RIGHTHAVEN'S IDENTIFICATION OF GENUINE ISSUES OF MATERIAL FACT THAT REQUIRE RESOLUTION PRIOR TO CONTINUED FAIR USE HEARING** |

# *AMICUS CURIAE* BRIEF

## I.   INTRODUCTION

*Amicus Curiae* Professor Jason Schultz ("*Amicus*") is an Assistant Clinical Professor of Law and the co-director of the Samuelson Law, Technology & Public Policy Clinic at the University of California's Boalt Hall School of Law.[1]  With the Court's prior approval (Docket No. 29 at 39:15-22), *Amicus* submits this response to Righthaven's Identification Of Genuine Issues Of Material Fact That Require Resolution Prior To Continued Fair Use Hearing (Docket No. 28).  Righthaven identifies nine facts in its submission.  But few of those facts are genuinely disputed.  And none of them are material.  The Court does not need to send the parties off on a drawn-out discovery process to conclude that CIO's use was fair.  The Court can decide the fair-use issue on the undisputed allegations and facts in the record.

## II.   BACKGROUND

On December 28, 2010, the Court held a hearing requiring Righthaven to show cause why this case should not be dismissed on fair-use grounds.  Docket No. 29.  The Court adjourned the hearing to allow Righthaven to identify any genuine issues of material fact that might prevent the entry of judgment.  *Id*. at 37:22-25.  On January 7, 2011, Righthaven identified nine facts that it claims are genuinely disputed and material to resolving the fair-use question.  Docket No. 28. Righthaven's submission focuses almost entirely on purported facts contained in Amicus's prior brief and does not reference the facts stated in its own Complaint or any other independent facts bearing on the legal issues in this case.

## III.   ANALYSIS

"The mere existence of *some* alleged factual dispute" is not enough to forestall summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Instead, claimed fact disputes must be genuine and material.  *Id*. at 248.  A dispute of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and it is

---

[1] Professor Schultz submits this brief on his own behalf, not on behalf of the Samuelson Law Clinic or the Boalt Hall School of Law.  His counsel represents defendants in two other actions pending in this court that have been filed by Righthaven.  *See* Case Nos. 10-cv-01343, 10-cv-01356.

material only if it "might affect the outcome of the suit under the governing law." *Id*. Righthaven's nine claimed disputes of fact are mostly non-genuine, and in all cases not material to the fair-use question. Accordingly, a fair-use finding is appropriate now.

### A. The Purpose And Character Of The Use

There is no meaningful factual dispute about the purpose and character of the CIO's use. By Righthaven's own admission, the CIO is a non-profit entity based in Oregon. Compl. ¶ 4 ("CIO is, and has been at all times relevant to this lawsuit, a not-for-profit Oregon entity."). And there is no dispute that CIO's website states that it "is a diverse, grassroots membership organization working to build a multi-racial, multicultural movement for immigrant and refugee rights." Compl. Ex. 2; *see generally* http://www. interculturalorganizing.org/. The CIO "focus[es] on four program areas that together catalyze systemic change – education, civic engagement, community organizing and mobilization, and intergenerational leadership development." *See* http://www.interculturalorganizing.org/who-we-are/mission-values/.

Righthaven claims that CIO infringed the copyright in a June 28, 2010 *Las Vegas Review-Journal* ("LVRJ") article that concerns the Las Vegas Metropolitan Police Department's ("LVMPD") partnership with the U.S. Immigration and Customs Enforcement under which the LVMPD refers criminal defendants to federal authorities for deportation. Compl., Ex. 1. The article reports that one third of those referrals involve misdemeanor charges, despite the police department's claim that it would only target violent, "high-level" criminals for deportation. *Id*. Righthaven's infringement claim stems from CIO's posting of the article to a blog on its website entitled "Immigrant and Refugee Issues in the News." Compl., Ex. 2. Righthaven does not dispute that the LVRJ, the original publisher of the article, has and continues to make available the entire article for free on the Internet. S*ee* http://www.lvrj.com /news/questions-generated-by-287-g--97289294.html; *see also* Compl., Ex. 1 (showing advertising-free version of the article available through the Print This feature).

Based solely on the undisputed facts, the Court should rule that the first fair-use factor favors CIO. The CIO is a non-profit organization in Oregon, not a newspaper located in Las Vegas. The CIO posted on its website a freely available newspaper article that relates directly to

its mission.  There is no claim the CIO singled out the article for any special treatment or used it in any fundraising campaign.  The CIO did not sell the article or try to palm it off as its own.  Nor are there any allegations that CIO monetized any of the content on its website, let alone the article at issue.  The facts here are straightforward:  a non-profit posted an article to a website for a purpose different from the purpose of its original publication.  That is a prototypical fair use.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F. 3d 701, 722 (9th Cir. 2007) (finding fair use where defendant used a copyrighted work "in a new context to serve a different purpose").

Moreover, when a defendant acts in good faith, that weighs in favor of fair use.  *See Marcus v. Rowley*, 695 F.2d 1171 (9th Cir. 1983); *Lish v. Harper's Magazine Foundation*, 807 F. Supp. 1090 (S.D.N.Y. 1992); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1122 (D. Nev. 2006).  Likewise, "[c]ourts are more willing to find a secondary use fair when it produces a value that benefits the broader public interest."  *Am. Geophysical Union v. Texaco Inc.,* 60 F.3d 913, 922 (2d Cir. 1995).  Here, there is nothing to suggest that CIO was acting in bad faith when it posted the article to its website, and the posting on its face demonstrates that it produced a value that benefits the broader public interest by informing those concerned with immigrant rights about relevant developments.

Because the undisputed facts and allegations overwhelmingly favor the CIO on the first factor, none of Righthaven's allegations about facts in dispute are material (*i.e.*, even if they are true, they would not flip the first factor in Righthaven's favor).  Thus, the Court and the parties need not waste their time and energy with discovery proceedings concerning these facts.  That is clear from evaluating Righthaven's identified facts:

**Fact No. 1**:  *"CIO, a non-profit group, used the Curtis Article to educate . . . ."*

Righthaven admits that the CIO is a non-profit entity.  *See* Compl. ¶ 4.  However, it claims that the CIO did not necessarily post the article for an educational purpose.  Righthaven suggests a "plethora of other possible reasons" potentially motivating the CIO's posting of the article on its "Immigrant and Refugee Issues in the News" blog.  Docket No. 28 at 7.  But Righthaven does not identify those reasons, its Complaint does not admit of them, and it is difficult to imagine what Righthaven has in mind.  Based on the undisputed facts, a reasonable

juror could not find that the CIO's use was anything different from what it appears to be: a non-profit group's non-commercial posting of an article that relates to its mission of educating users about immigrant and refugee rights.

**Fact No. 2:** *". . . those concerned with immigrant and refugee rights . . ."*

Righthaven claims that the audience for Righthaven's website might not be people concerned with immigrant and refugee rights. Docket No. 28 at 7-8. That is a non-genuine fact dispute. The CIO's website publicizes its purpose and is filled with content related to that purpose. *See* http://www.interculturalorganizing.org/. No reasonable juror could conclude that some meaningful percentage of CIO website readers do not care about the CIO's mission and purpose.

**Fact No. 3:** *". . . to create an archive of related information . . ."*

There are no facts in the record concerning the archival purpose of CIO's posting of the article. However, that certainly appears to be the CIO's purpose based on Exhibit 2 of Righthaven's Complaint. Regardless, this fact is not material because its resolution does not affect the outcome of the case. If the CIO did not have an archival purpose, then the Court will decide the fair-use question based on the known attributes of the CIO's use. If the CIO did have an archival purpose, Righthaven admits that such a use would be transformative. Docket No. 28 at 8 ("Undoubtedly, that use would be different than the purpose of the use intended by the LVRJ."). Accordingly, the resolution of this fact question can only *harm* Righthaven's fair-use position. It is immaterial at best.

**Fact No. 4:** *"the LVRJ published the Curtis Article to provide timely, generalized information to Las Vegas residents about events in their local community"*

There is no fact dispute here at all. The quote describes how general-interest newspapers operate. That is confirmed by common sense, the article itself, and the LVRJ's own statements. *See* Compl., Ex. 1; *see also* http://www.lvrj.com/about/work.html ("The Las Vegas Review-Journal is a 167,000-circulation morning daily serving the Las Vegas valley, one of the fastest-growing areas in the nation."). Regardless, the quote concerns facts within Righthaven's control, not CIO's. A party may not stave off summary judgment by pointing to the claimed existence of

1  undisclosed evidence in its own files.  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact
2  . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials
3  in the record."); *see also Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,
4  587 (1986) ("the nonmoving party must come forward with 'specific facts showing that there is a
5  *genuine issue for trial*.'") (quoting former Fed. R. Civ. P. 56(e)) (emphasis in *Matushita*);
6  *Precision Airmotive Corp. v. Rivera*, 288 F.Supp.2d 1151, 1154 (W.D. Wash. 2003) ("A
7  continuance is not justified when all the information and knowledge is already in Plaintiff's
8  possession.").  And it is curious that Righthaven would reference discovery concerning materials
9  within its control, but not tell the Court what that discovery would likely show.  Given the
10 procedural posture here, the Court may well presume that such undisclosed facts are harmful to
11 Righthaven's case.  Why else would Righthaven allude to, but not provide, this evidence?

12      **Fact No. 5:**  *"CIO's use was non-commercial.  Indeed, CIO did not profit in any way*
13 *because the Curtis Article appeared on its blog."*

14      Righthaven claims that the CIO must have benefitted from posting the article because it
15 relates to the CIO's mission.  But that does not matter.  The defendant in every fair-use case
16 benefits from using the original work.  That was true of the photographs in *Kelly v. Arriba Soft*
17 and *Perfect 10 v. Amazon*, the computer software in *Sega v. Accolade*, the ad parody in *Hustler v.*
18 *Moral Majority*, and the poems in *Field v. Google*.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 487
19 F. 3d 701 (9th Cir. 2007); *Kelly v. Arriba Soft Corp.*, 336 F. 3d 811 (9th Cir. 2003); *Sega*
20 *Enterprises Ltd. v. Accolade, Inc.*, 977 F. 2d 1510 (9th Cir. 1992); *Hustler Magazine, Inc. v.*
21 *Moral Majority, Inc.*, 796 F. 2d 1148 (9th Cir. 1986); *Field v. Google Inc.*, 412 F. Supp. 2d 1106
22 (D. Nev. 2006).  So even if the Court assumes that the CIO benefitted when the article appeared
23 on its website, that does not mean that the first factor would come out in Righthaven's favor.

24      Despite having months to scour the CIO's website and find evidence of commercial
25 benefits that possibly could have flowed to the CIO as a result of the posting at-issue, the best
26 that Righthaven can muster is the claim that the CIO "accept[s] donations and contributions,
27 which are also made possible, in part, through the posting of the [article]."  Docket No. 28 at 9.
28 That is far-fetched.  The CIO's website lists the reasons that people donate, and they do not

1 relate to the content on the website. *See* http://www.interculturalorganizing.org/get-
2 involved/donate/donate-to-cio/.
3     Regardless, even indulging Righthaven's speculation that someone, somewhere gave
4 money to CIO because of the article, that would not overtake the obvious transformative,
5 educational, and non-profit characteristics of the use. *See Campbell v. Acuff-Rose Music, Inc.*,
6 510 U.S. 569, 585 (1994) (rejecting bright-line rules concerning the first factor and urging courts
7 to look at the context of the use); *Hustler*, 796 F. 2d at 1152-53 (finding fair use "[e]ven
8 assuming that the use had a purely commercial purpose"); *Accolade, Inc.*, 977 F. 2d at 1522-23
9 ("Accolade copied Sega's code for a legitimate, essentially non-exploitative purpose, and that the
10 commercial aspect of its use can best be described as of minimal significance."); *Sony Computer*
11 *Entertainment America v. Bleem*, 214 F. 3d 1022, 1028 (9th Cir. 2000) ("Although Bleem is
12 most certainly copying Sony's copyrighted material for the commercial purposes of increasing
13 its own sales, such comparative advertising redounds greatly to the purchasing publics benefit
14 with very little corresponding loss to the integrity of Sony's copyrighted material."). *Kelly*, 336
15 F. 3d at 820 (first factor weighed in favor of fair use concerning commercial use of photographs
16 "due to the public benefit of the search engine and the minimal loss of integrity to Kelly's
17 images"); *Amazon*, 487 F. 3d at 723 ("the significantly transformative nature of Google's search
18 engine, particularly in light of its public benefit, outweighs Google's superseding and
19 commercial uses of the thumbnails in this case.").
20                                       \* \* \*
21     Righthaven has not raised any genuine issues of material fact that would preclude a
22 finding in the CIO's favor on the first fair-use prong.
23     **B.**    **The Nature Of The Work**
24     The Court can determine the nature of the work by reviewing Exhibit 1 of Righthaven's
25 Complaint. It is a short news article that pertains to immigration enforcement in the Las Vegas
26 area. Compl., Ex. 1. Righthaven's **Fact No. 6** contests whether the article was "the result of the
27 creative expression of its author." That fact is not material. Even if the Court assumes that the
28 news story contained some creative qualities (such as the structure, selection, and manner of

presentation of the facts), those elements would not tip this factor in Righthaven's favor. The Ninth Circuit has ruled that the "nature of the work" factor weighed "substantially" in favor of fair use for a video that was "informational and factual and news," despite the camera operator's creativity when shooting the footage. *See Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997). The result should be no different here. Regardless, as noted above, Righthaven cannot point to the possibility of undisclosed facts within its possession to try to avoid summary judgment.

### C. The Amount And Substantiality Used

Righthaven does not identify any disputed facts concerning the third fair-use factor.

### D. Effect On Potential Market For Or Value Of The Copyrighted Work

Righthaven identifies three facts concerning the "effect on the market" factor:

**Fact No. 7**: *"It is highly [im]probable that anyone who would have otherwise purchased a paper copy of the LVRJ or visited its website would choose not to because of CIO's blog post."*

**Fact No. 8**: *"CIO's use of the Curtis Article expanded public knowledge about immigration enforcement without cannibalizing the market for the original work."*

**Fact No. 9**: *"CIO actually increased the Review-Journal market by exposing a new segment of customers to its already free website."*

While these observations seem beyond any genuine dispute, the Court does not need to resolve them. That is because there is no market for the work at all. Righthaven owns the copyright to the article, not the LVRJ. Righthaven does not publish a newspaper and does not license or otherwise commercially exploit the article.[2] Instead, Righthaven uses the article exclusively as a litigation tool. No amount of discovery or expert testimony could change these facts, and Righthaven has failed to introduce or identify any "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1), to show a dispute over these facts. Given these realities, the

---

[2] At the December 28, 2010 OSC hearing, the Court asked Righthaven directly whether or not it had a licensing market for the work. Docket No. 27 at 24:11-24. Righthaven's counsel said he would have to check, but that this was a subject for discovery. *Id*. However, in its subsequent brief, Righthaven did not identify this as a disputed fact, or suggest that it needed discovery on this issue. Accordingly, Righthaven has conceded that it is undisputed that the company does not commercially exploit the article.

fourth factor favors the CIO based on the undisputed record. *See Blanch v. Koons,* 467 F. 3d 244, 258 (2d Cir. 2006) (fourth factor "greatly favors" a fair use finding where the copyright holder was not commercially exploiting photograph); *Field*, 412 F. Supp. 2d at 1121 (fourth factor favored defendant where there was "no evidence of any market for [the copyright holder's] works."); Nimmer on Copyright § 13.05[A][4] (2010) ("On occasion, the lack of market harm is apparent.").

In its written submission to the Court before the show-cause hearing, Righthaven claimed entitlement to a "presumption" of market harm. Docket No. 14 at 17-18. But that presumption is only relevant where the copyright holder has demonstrated the existence of a commercial market for its work. *Am. Geophysical Union*, 60 F.3d at 930 (noting that courts have found that "the fourth factor will favor the secondary user when the only possible adverse effect occasioned by the secondary use would be to a potential market or value that the copyright holder has not typically sought to, or reasonably been able to, obtain or capture."), 931 ("[I]t is sensible that a particular unauthorized use should be considered 'more fair' when there is no ready market or means to pay for the use, while such an unauthorized use should be considered 'less fair' when there is a ready market or means to pay for the use. The vice of circular reasoning arises only if the availability of payment is conclusive against fair use."); *cf. Sony*, 464 U.S. 417 (harm to established market for over-the-air television programs may be presumed if the "intended use is for commercial gain"). The presumption relates to *harm* to a market, it does not relieve a copyright holder of showing that a market exists in the first place. To the extent that such a presumption has currency, Righthaven has failed to show that as a copyright plaintiff, it has established any commercial market for the article. It therefore is not entitled to any presumption.

Moreover, "[n]o 'presumption' or inference of market harm that might find support in *Sony* is applicable to a case involving something beyond mere duplication for commercial purposes." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994). The undisputed facts here show "something beyond" mere commercial duplication of a copyrighted work. The CIO's posting of the article has indisputable educational, non-profit aspects. That is enough to remove any presumption that Righthaven might claim.

## IV. CONCLUSION

Righthaven has failed to demonstrate the presence of any genuine issues of material fact concerning the four fair-use factors and has failed to show cause why this case should not be dismissed on fair-use grounds.

Dated: January 14, 2011                              Respectfully submitted,

CHAD A. BOWERS, LTD.

By: /s/ Chad Bowers
Chad A. Bowers
NV State Bar Number 7283
3202 W. Charleston Blvd.
Las Vegas, Nevada 89102

*Attorneys for* Amicus Curiae *Professor Jason Schultz*