1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RIGHTHAVEN, LCC, a Nevada limited
liability company,

          Plaintiff,

v.

KAYSE JAMA, an individual, and
CENTER FOR INTERCULTURAL
ORGANIZING, a non-profit
organization,

          Defendants.

2:10-CV-1322 JCM (LRL)

**ORDER**

Presently before the court is the order to show cause (doc. #12) why the court should not dismiss the instant action under the 17 U.S.C. § 107 fair use exception. Plaintiff Righthaven filed a response (doc. #14) to the order to show cause, alternatively requesting a chance to conduct discovery pursuant to Federal Rule of Civil Procedure 56(f).[1] The court also permitted (doc. #19) Professor Jason Schultz to file an amicus brief (doc. #21).

**I.     Background**

This dispute centers on a newspaper article, first published by the Las Vegas Review-Journal ("LVRJ") on June 28, 2010. On July 8, 2010, defendant Center for Intercultural Organizing ("CIO")

---

[1] Under the recent amendments to the Federal Rules of Civil Procedure, the court notes that the proper citation should be Rule 56(d), which allows the court to allow time for discovery where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its position. . . ."

**James C. Mahan**
**U.S. District Judge**

1   posted the article in its entirety on the CIO website. Thereafter, on July 26, 2008, the LVRJ assigned

2   ownership of the copyright to plaintiff Righthaven, which filed suit against CIO on August 5, 2010,

3   alleging copyright infringement under 17 U.S.C. § 501.

4          The disputed article discusses whether police in the Las Vegas area were targeting minorities.

5   Defendants, an Oregon nonprofit organization dedicated to helping immigrants become aware of

6   immigration-related issues in the United States, posted the article in its entirety on their website,

7   purportedly to educate the public about the issues contained therein.

8          On December 28, 2010, this court held a show cause hearing, which was adjourned to give

9   plaintiff an opportunity to file a list of disputed, material facts. (Doc. #27). Thereafter, plaintiff filed

10  a response (doc. #28), to which the defendants (doc. #29) and the amicus (doc. #30) replied. The

11  court again held a hearing on the order to show cause on March 18, 2011, (doc. #33) and, having

12  considered the papers and pleadings submitted, as well as the oral arguments of the parties present,

13  now finds that there are no disputed material facts to present a genuine issue for trial. Accordingly,

14  the defendants are entitled to judgment as a matter of law.

15  **II.   Legal Standard**

16         Summary judgment is appropriate when, viewing the facts in the light most favorable to the

17  nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to

18  judgment as a matter of law. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir. 1996); FED. R. CIV. P.

19  56(c). The moving party bears the burden of presenting authenticated evidence to demonstrate the

20  absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

21  (1986); *see Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) (articulating the standard for

22  authentication of evidence on a motion for summary judgment).

23         The court may "[a]fter giving notice and a reasonable time to respond . . . (1) grant summary

24  judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider

25  summary judgment on its own after identifying for the parties material facts that may not genuinely

26  be in dispute." FED. R. CIV. P. 56(f). Here, the court has invoked subdivision (f) and given the parties

27  a reasonable time to respond to the order to show cause. Although the plaintiff has requested

28

**James C. Mahan**
**U.S. District Judge**

1   discovery, noting that the party against whom summary judgment is granted must be "on notice that

2   she had to come forward with all of her evidence," *Celotex Corp.*, 477 U.S. at 326, the court finds

3   that further discovery is unnecessary, as the court already possesses enough information to rule as

4   a matter of law on the issue of fair use.

5   **III.    Fair Use Analysis**

6          A plaintiff must satisfy two requirements to present a prima facie case of copyright

7   infringement: (1) ownership of the allegedly infringed material, and (2) that the alleged infringers

8   violated at least one exclusive right granted to copyright holders. 17 U.S.C. §§ 106, 501(a).

9   However, even where a plaintiff has alleged a prima facie case of copyright infringement, the

10  defendant may refute the claim if the defendant has engaged in a fair use of the material.

11         The fair use doctrine is an affirmative defense to a claim of infringement, which protects

12  certain uses of a copyright. The court considers four factors to determine whether the use of a

13  copyrighted work is fair: "(1) the purpose and character of the use, including whether such use is of

14  a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work;

15  (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole;

16  and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17

17  U.S.C. § 107. The four factors should be considered in light of the purposes of copyright to promote

18  the progress of science and useful arts and to serve the welfare of the public. *Perfect 10, Inc. v.*

19  *Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) (internal citations omitted).

20         "Fair use is a mixed question of law and fact. If there are no genuine issues of material fact,

21  or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach

22  only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies

23  as a fair use of the copyrighted work." *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d

24  1119, 1120 (9th Cir. 1997) (citing *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148,

25  1150 (9th Cir.1986) (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539,

26  559 (1985))). Here, weighing each of the four use factors and resolving all issues in favor of plaintiff

27  Righthaven, the court finds that a reasonable trier of fact could only reach one conclusion – that the

28

**James C. Mahan**
**U.S. District Judge**

1   alleged infringement qualifies as fair use.

2         (A)    <u>Purpose and Character of the Use</u>

3         "[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news

4   reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an

5   infringement of copyright." 17 U.S.C. § 107. This first factor addresses whether the new work

6   "replaces the object of the original creation or instead adds a further purpose or different character

7   . . . [and] is 'transformative.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir.

8   2001) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). This factor also

9   requires the court to determine whether the new use is commercial or non-commercial. *Id.*

10         First, CIO's use of the article is transformative. Although the former owner, the LVRJ, used

11   the article for news-reporting, the court focuses on the current copyright owner's use, which, at this

12   juncture, has been shown to be nothing more than litigation-driven. Accordingly, CIO's use of the

13   article to educate the public is transformative and does not constitute a substitution of the plaintiff's

14   use. *See Perfect 10*, 508 F.3d at 1146 (discussing the effect of market substitution in relation to the

15   first and fourth factors).

16         Second, the court finds that the purpose of the use here was non-commercial. The parties

17   agree that defendant CIO is a non-profit corporation with an educational mission; indeed the plaintiff

18   has characterized the defendant as such on the face of the complaint. (*See* doc. #1, ¶ 4) (referring to

19   CIO as "a not-for-profit Oregon entity"). Additionally, the declaration of defendant and CIO

20   executive Kayse Jama (doc. #7-2) evidences CIO's educational mission and establishes that

21   defendants did not sell, license, or publish the work commercially. In light of this evidence, the court

22   also concludes that defendants' solicitation of donations on their website is immaterial, and no

23   reasonable jury could conclude that the defendants used the disputed article for a commercial

24   purpose. Accordingly, the first factor weighs in favor of a finding of fair use.

25         (B)    <u>Nature of the Copyrighted Work</u>

26         The second factor considers the nature of the copyrighted work. "Works that are creative in

27   nature are 'closer to the core of intended copyright protection' than are more fact-based works."

28

**James C. Mahan**
**U.S. District Judge**

1    *Napster*, 239 F.3d at 1016 (citing *Campbell*, 510 U.S. at 586). Where the disputed use can be

2    characterized as news-reporting, this factor weighs heavily in favor of a finding of fair use. *Los*

3    *Angeles News Serv.*, 108 F.3d at 1121.

4           The court concludes that a reasonable trier of fact could only reach one conclusion as to the

5    nature of the disputed article – it is an informational work, which readily lends itself to a productive

6    use by others and, thus, deserves less protection than a creative work of entertainment. *Sony Corp.*

7    *Of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 496–97 (1984). Discovery and additional fact-

8    finding are unnecessary to reach this conclusion, which the court draws simply from reading the

9    article itself. Accordingly, this factor weighs heavily in favor of a finding of fair use.

10          (C)    Amount/Substantiality of the Portion Used in Relation to the Work as a Whole

11          "The third factor considers whether the amount and substantiality of the portion used in

12   relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the

13   copying." *Campbell*, 510 U.S. at 586.  Although "wholesale copying does not preclude fair use per

14   se, copying an entire work militates against a finding of fair use." *Napster*, 239 F.3d at 1016 (internal

15   quotations omitted). Thus, under some circumstances, a court may determine that a use is fair even

16   where the protected work is copied in its entirety. *Id.* (citing *Sony*, 464 U.S. at 449–50).

17          Here, the court finds that, although the defendants posted the work in its entirety, the amount

18   used was reasonable in light of the purpose of the use, which was to educate the public about

19   immigration issues. Because of the factual nature of the work, and to give the full flavor of the

20   information, the defendants used the entire article rather than trying to distill it. The court finds that

21   it would have been impracticable for defendants to cut out portions or edit the article down. *See e.g,*

22   *Campbell*, 510 U.S. at 588–89 (noting that for a parody to be effective, it must take enough material

23   to evoke the original).

24          Additionally, the court finds *Worldwide Church of God v. Philadelphia Church of God, Inc.*,

25   227 F.3d 110, 1118 (9th Cir. 2000), relied on heavily by the plaintiff, distinguishable. That  case

26   does not stand for the broad proposition that use of an entire work precludes a fair-use finding. *Id.*

27   at 1118 (recognizing that wholesale copying does not necessarily preclude a finding of fair use). In

28

**James C. Mahan**
**U.S. District Judge**

1    *Worldwide Church*, a church owned the copyright in a 380-page book written by its founder. 227

2    F.3d at 1112. The church discontinued distribution of the book, following a change in church

3    doctrine. *Id.* at 1113. However, a splinter group within the church countermanded the directive by

4    printing and distributing 30,000 copies of the book and ignoring a cease-and-desist letter. *Id.*

5    Ultimately, distribution of the book drew thousands to the new congregation, and those members

6    tithed ten-percent of the church's income. *Id.* at 1118.

7        The instant action and *Worldwide Church* are distinguishable. First, the alleged infringers

8    here are using the work for informational purposes, rather than to garner membership in an

9    organization competing directly with the plaintiff. Second, the infringement in *Worldwide Church*

10   was of an entire published book, rather than one news article in an online newspaper. Third, the

11   infringers in *Worldwide Church* deleted the plaintiff's copyright information from their version of

12   the book, whereas the defendants here attributed the article to the LVRJ. Accordingly, the court finds

13   that this factor favors neither party.

14       (D)    Effect of the Use Upon the Potential Market

15       The fourth factor is the effect of the allegedly infringing use upon the potential market for

16   or value of the original, copyrighted work. *Campbell*, 510 U.S. at 590 (citing 17 U.S.C. § 107(4)).

17   The rationale behind the inclusion of this factor is that "[f]air use . . . is limited to copying by others

18   which does not materially impair the marketability of the work which is copied." *Harper & Row*

19   *Publishers*, 471 U.S. at 566–67.

20       The weight given to this factor will depend on the relative strength of the showing on other

21   factors, for example:

22       A challenge to a noncommercial use of a copyrighted work requires proof either that
         the particular use is harmful, or that if it should become widespread, it would
23       adversely affect the potential market for the copyrighted work. . . . If the intended use
         is for commercial gain, that likelihood [of market harm] may be presumed. But if it
24       is for a noncommercial purpose, the likelihood must be demonstrated.

25   *Napster*, 239 F.3d at 1016 (quoting *Sony*, 464 U.S. at 541). Here, as established under the first-factor

26   analysis, the use is non-commercial; thus, no presumption of harm arises. Additionally, because the

27   work is transformative under the first factor, there is no "market substitution . . . and market harm

28

1    may not be so readily inferred." *Perfect 10.*, 508 F.3d at 1168 (citing 17 U.S.C. §107(4)). Thus, the

2    burden falls on the plaintiff to demonstrate the existence of market harm. The plaintiff has not met

3    its burden.

4         First, the plaintiff has failed to allege that a "market" exists for its copyright at all, and the

5    court declines to simply presume the existence of a market. *See e.g., Field v. Google Inc.*, 412 F.

6    Supp. 2d 1106, 1121 (D. Nev. 2006) (declining to presume a market exists where the work was

7    offered for free in its entirety). Second, because Righthaven cannot claim the LVRJ's market as its

8    own and is not operating as a traditional newspaper, Righthaven has failed to show that there has

9    been any harm to the value of the copyright. *Cf. eBay v. MercExchange, LLC*, 547 U.S. 388 (2006)

10   (holding that courts should not broadly presume harm when issuing preliminary injunctions in the

11   patent context); *see Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) (extending *eBay* to the copyright

12   context and anchoring the irreparable harm analysis in equitable principles). Accordingly, the fourth

13   fair use factor weighs in favor of a finding of fair use.

14   **IV.    Conclusion**

15        The court finds that the defendant's use of the copyrighted article in this case constitutes fair

16   use as a matter of law. The article has been removed from its original context; it is no longer owned

17   by a newspaper; and it has been assigned to a company that uses the copyright exclusively to file

18   infringement lawsuits. Plaintiff's litigation strategy has a chilling effect on potential fair uses of

19   Righthaven-owned articles, diminishes public access to the facts contained therein, and does nothing

20   to advance the Copyright Act's purpose of promoting artistic creation.

21        Accordingly,

22        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that, in the case of *Righthaven*

23   *LLC v. Center For Intercultural Organizing et al*. (2:10-cv-01322-JCM -LRL), summary judgment

24   is granted in favor of the defendants;

25   . . .

26   . . .

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

                                           - 7 -

1       IT IS FURTHER ORDERED that the defendants shall prepare an appropriate judgment for

2 the court's review and signature.

3       DATED April 22, 2011.

4

5

                                    **UNITED STATES DISTRICT JUDGE**

James C. Mahan
U.S. District Judge